# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI,

AT THE

## APRIL TERM, 1887.

LOUISVILLE, NEW ORLEANS AND TEXAS RAILROAD COMPANY *v.* P. C. THOMPSON.

1. RAILWAY COMPANY. *Opening standing train for public convenience. Action by person injured in passing through opening. Failure to exercise reasonable care.*
If, at a station where freight and passenger trains usually meet and pass, the railway company habitually make an opening between the cars of the freight train on the side track for the purpose of permitting the public to pass from the depot to its passenger train on the main track, it is the duty of such company to use reasonable care and prudence to protect persons from injury while crossing its track through such opening, whether it be under any obligation to make such opening or not.

2. SAME. *Liability of for injury to one passing through opening in train. Duty of such person.*
And if one, before so crossing, take such precautions to avoid danger as a reasonable and prudent man would observe in such circumstances, he is entitled to indemnity for an injury occasioned by the employees of the railroad company closing the opening in the train, if such injury might have been avoided by ordinary and reasonable care on the part of the railroad company. *Bardwell* v. *M. & O. R. R. Co.*, 63 Miss. 574; *V. & M. R. R. Co.* v. *McGowan*, 62 Ib. 682; *V. & M. R. R. Co.* v. *Alexander*, 62 Ib. 496, cited.

3. SAME. *Liability for injuring person passing through opening in train. Case in judgment.*
A north-bound freight and a north-bound passenger train of a railroad company

584

were accustomed to pass each other at a certain station, K.    It was the custom to side-track the freight train, and to uncouple and open it at or near the depot; so that the public could pass over to the passenger train, and the freight train usually remained open and uncoupled until the passenger train had departed.   On the day in question all this was done as usual, except that the opening made in the freight train was only about three feet instead of being about eight feet, the usual width.   Several persons passed through and over to the passenger train.   T., desiring to go over to the passenger train on business, it still being there, approached the opening, looked around, saw the freight cars were not in motion, and started through, when the cars suddenly came together without any previous warning which he could have seen or heard.    His pelvic bone was crushed, his thigh was broken in two places, his leg was broken, and he was otherwise seriously and permanently injured.    *Held,* that the railroad company are liable in damages for the injury thus inflicted upon T.

4. Same.    *Damages.    Whether excessive.    Case in judgment.*
   And in the case above stated a verdict for fifteen thousand dollars is not excessive.

5. Same.    *Practice.    Statements of law by counsel in argument.    Case in judgment.*
   Counsel for plaintiff, in the case above set out, in his argument stated "that the railroad company was under an obligation to the general public, when the passenger train was at the depot, to open the freight train so that any one might pass through."    *Held,* that, if the proposition stated was not sound law, the defendant should have asked the court to instruct the jury properly on this point, but having neglected to do this it cannot obtain a reversal of judgment because of such conduct of plaintiff's counsel, there being no such abuse of his privileges as calls for correction by this court.

APPEAL from the Circuit Court of Franklin County.

HON. J. B. CHRISMAN, Judge.

The south-bound passenger and the north-bound freight trains of the Louisville, New Orleans and Texas Railroad Company were accustomed to pass each other at a station named Knoxville.   On January 28, 1886, the freight train arrived first, as usual, and immediately took the side track, which was on the east side of the main track, as was the depot also.   An opening was made at the depot by uncoupling the freight train and separating the two parts, as had been the usual custom.   It was the custom of the depot agent, expressmen, passengers, and the public generally to use this open-

ing in going to the passenger train.    Usually the freight train would remain at the station uncoupled until the passenger train had gone.    On the day above stated the opening had been reduced from the usual size (from seven to ten feet) to about two or three feet in width by another opening having been made at a crossing of a new roadway over the track.    On the day in question several persons crossed over to the passenger train, among them the depot agent.    P. C. Thompson, whose store was on the east side of the track, desiring to see the agent about shipping some freight, came up to the opening, looked about, and seeing that the freight train was not in motion, and not seeing any signal for it to move, proceeded to cross over to the platform where the passenger train was standing.    Just when he was between the cars the boxes came together with great force, a brakeman cried out " Look out !" and Thompson was caught between the bumpers.    His pelvic bone was crushed, his thigh was broken in two places, his leg was broken, and he was confined to his bed for ten weeks, suffering much of the time with intense pain.    His leg, on recovery, was found to be two inches shorter, and he was otherwise seriously and permanently injured. The train came together while the passenger train was still at the station and without any previous signal except the usual hand signal of the conductor to the engineer to back the train to recouple, which was not seen by Thompson.

Thompson brought this action against the railroad company for damages and the jury found in his favor and awarded him fifteen thousand dollars.    On the trial the conductor testified that he warned the public not to attempt to cross through the opening just before the train started to move back, but this was contradicted by several witnesses.

The defendant appealed to this court and made many assignments of error, one of which relates to the action of the court below :

" In refusing when requested by appellant to correct statements of law made to the jury by counsel for the appellee, and in refusing to confine counsel in his discussion of the law of the case to that announced in the instructions of the court."

The bill of exceptions on this point is as follows: "In his first address to the jury, Hiram Cassedy, counsel for plaintiff, stated that the railroad company was bound and was under an obligation to the general public, when the passenger train was at the depot, to open the freight train so that any one might pass through, whether from a whim or on business. Counsel for the defense here interrupted counsel and asked the court to correct counsel and require him to refrain from stating to the jury other propositions of law than those announced in the instructions of the court. The court said it would not say whether counsel's statement of the law was correct or not, and would not correct him or interfere with his statement of the law, but if he misstated facts would correct him."

*W. A. Percy*, for the appellant.

1. Unless some duty was owing and not discharged defendant cannot be guilty of negligence. It certainly was not incumbent on defendant to delay starting on its journey until after the passenger train started, the latter being delayed, even though usually, in the management of its train, defendant's passenger train left this point first. No rule of law—statute or otherwise—requires this. It was not exacted by any regulation of the company; it was not contained in any announcement, printed or verbal, to the public. It was not incumbent on defendant to couple up its train in any other or different manner from the usual customary method of coupling trains, or from the usual and customary method of coupling this train at this particular point. It was not its duty to blow the whistle or ring a bell for the purpose of making this coupling. (51 Miss. 157.) It was under no obligation to plaintiff to watch for his coming, or to have some one stationed at the opening through which he came on that side of its track next the depot to warn him against danger.

The crossing was not a public one; it was made for the sole and only purpose of affording convenient passage to and from the passenger train for passengers and persons having business with the train.

Plaintiff's position as to his rights and the obligations of defend-

ant to him could not be stronger than that of a licensee. The defendant was under no obligation of active duty to prevent injury to a licensee. 66 N. Y. Rep. 243.

2. The plaintiff in this case knew the risk he was running. But the distance to go was only two steps, and he relied upon the fact that he had not heard the whistle or bell. In thus acting he was guilty of contributory negligence as a matter of law. 61 Tex. 503; 76 Me. 357; 77 Me. 85; 125 Mass. 75; 41 N. Y. 525; 81 Ill. 26; 72 Ill. 222; 19 Am. & Eng. Cases 342; Ib. 173; Ib. 183; Ib. 42; 12 Am. & Eng. Cas. 77; Beach on Con. Neg., § 67, 68, 71.

In 73 Ill. 394 it is held that where a passenger attempted to pass through cars of freight train standing at depot on a siding and blocking the way, in order to get to passenger train, and freight suddenly started and hurt him, his negligence would defeat a recovery. So it is negligence *per se* to crawl under cars stopped temporarily on the track or to climb over stationary cars. Beach on Con. Neg., § 72.

Either of these operations, condemned as negligence *per se*, in the position that the train occupied when Thompson attempted to pass through, would have been manifestly safer and altogether more prudent than that attempted by him. Rorer on Railroads 1018, 1055, 1058, 1061, 1027, 1031; 52 N. Y. 215, 223.

The doctrine deducible from all the cases is, that the law conclusively affects every one going upon a railroad track with a knowledge that he is in or is about to occupy a place of danger; that if a train is on the track which is about to or may move at any moment his position calls for the highest degree of care, and that a failure to use such care by halting, listening, looking, and using all other means of observation in his power is *per se* negligence, and will defeat a recovery, no matter what may have been the negligence of the railroad company. The doctrine of most of the courts, and among them our own, is that in such case the plaintiff should be nonsuited. A brief examination of the evidence will demonstrate that Thompson utterly failed in every requirement of law.

3. The court below erred in allowing counsel for plaintiff to state the case to the jury otherwise than given in the instructions.

This seriously affected the position of the parties before the jury. Eminent counsel, whose judgment of law presumably had great weight with his neighbors and friends, stated to the jury, with a degree of earnestness and candor which carried conviction, a proposition of law bearing directly upon the merits of the case not contained in the instructions, which he had not requested to be given, and which, if correct, placed the defendant before the jury in the light of a violator of the law. What he stated to be the law was not and is not the law. Nothing, it would seem, could be plainer than that if this practice is tolerated it must seriously interfere with that fairness which the law seeks to throw around a jury trial.

Infinitely more mischievous in its results would be this practice if tolerated than that of misstating the evidence or stating facts not in evidence.

The court holds the latter ground for a new trial. 55 Miss. 153 ; 56 Miss. 299. " By our statutes the method of communication between the court and the jury touching the law of the case being tried is clearly defined. The judge is the source from which the information is to be supplied." If a party " desired to have any principle given to the jury as the law governing his case he should have applied to the presiding judge for a charge to that effect." *Bang* v. *State,* 61 Miss. 363. If counsel misstates facts the jury can compare such statements with their own recollection of the evidence, but when he launches out into the domain of law they are either without a chart to go by, or, if there is conflict between counsel's statement and the instructions, they must decide between him and the judge. *Ormsby* v. *Johnson,* 1 B. Monroe 80; *U. S.* v. *Columbus,* 5 Cranch U. S. C. C. 305 ; *Harrison* v. *Park,* 13 Marshall 173 ; Hayne on New Trial 157.

4. The damages were excessive. I am aware of the indisposition of the court to disturb verdicts on this ground, but without going into any argument on the question, I submit that these

damages are so exorbitant when compared with the injury shown to have been received and the pecuniary loss as to evince passion and prejudice and an utter disregard of right and justice, especially as the evidence shows indubitably that the injury was the result of a pure accident for which, if any one was to blame, it was the plaintiff himself, and an entire absence of recklessness and willfulness.

*W. A. Percy* also made an oral argument.

*H. Cassedy,* for the appellee.

1. While the right of the company to use its property in the prosecution of its legitimate business is conceded to the fullest extent, yet it no more than any other owner was or is exempt from the limitation that it must be so used as not to unnecessarily inflict injury upon others.

This duty is enjoined even as to a trespasser, but Thompson was not a wrongdoer in attempting to do that which the company impliedly, if not expressly, invited him to do.   59 Maine 183 ; 99 Mass. 216 ; 102 U. S. 580 ; Cooley on Torts 604, 607 ; 58 Wis. 646.

The company, having by its conduct and custom authorized the public generally to cross its track at that point and time, could not so act as to mislead those who sought to cross and subject them without notice to perils from which they had a right to suppose they were exempt without responsibility in case of injury.

2. But it is contended that Thompson was negligent in attempting to pass through the opening, and that, assuming such negligence to exist, it contributed to the injury, and he cannot, for this reason, recover.   Whether he was or not is a question of fact in this case, and was fairly submitted to the jury under instructions given in behalf of the company most liberally for it expounding the law of contributory negligence, and the jury has said by verdict that he was not guilty of contributory negligence in attempting the passage under the circumstances disclosed by the evidence, and the judge who presided at the trial has, in effect, said that this finding of the jury was warranted by the evidence.

But if it be conceded that Thompson was negligent to some

extent and that such negligence contributed to his injury, still his right to recover is not affected unless he was *in fault* in so acting. Sherman & Redfield on Negligence, § 28 ; Beach on Contributory Negligence, § 33.

3. In view of the injuries sustained, the verdict is not excessive. In *Walker's Case*, 24 Hun. (N. Y.) 184, where no bones were broken, but he suffered constant pain, and his ability to earn money was seriously impaired, it was held that a verdict of thirty thousand dollars was not excessive.

"The following are cases of damages for personal injuries that were held not to be excessive :

Fifteen thousand six hundred and ninety-five dollars and sixteen cents, 46 N. Y. Super. Ct. 211 ; ten thousand dollars not excessive, 71 Mo. 66 ; eleven thousand dollars not excessive, 50 Wis. 419 ; fifteen thousand dollars not excessive, 13 Nev. 106 ; eleven thousand dollars not excessive, 43 Iowa 662 ; nine thousand dollars not excessive, 38 Iowa 592 ; twenty thousand dollars not excessive, 63 Barb. (N. Y.) 260 ; twelve thousand dollars not excessive, 64 Barb. (N. Y.) 438.

*H. Cassedy* also made an oral argument.

*J. F. Sessions*, on the same side.

Thompson exercised all the care and caution that could be expected of a prudent man. He acted on the established usages and customs of the company, and as he approached the opening through which the agent and so many others had just passed, and with the passenger train still standing on the main track, the agent not having yet returned, he slackened his pace, looked around, "took in the situation," and no signal being given, and seeing that the train was stationary, walked into the opening only to be "*caught*," as so many of the witnesses with inadvertent appropriateness express it.

Judge Cooley, in *Detroit, etc.,* v. *Van Steinburg*, 17 Mich. 99–118, says : "Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action

of another which he could not reasonably have anticipated," etc., and " it must be left to the jury to say," etc.    Beach 459.

As illustrative and confirmatory, see *Baltimore and Ohio Railroad* v. *Fitzpatrick,* 35 Md. 44.

" Although a road may not have been actually dedicated or legally laid out across the track of a railroad company, yet if there is any invitation or permission, express or implied, on the part of the company to the public at large to cross its track at that point, it may become liable to take all such precautions as it is bound to take in the case of an ordinary public crossing."  14 American and English Railway Cases 681 and cases cited.

In *Murphy* v. *Boston and Albany Railroad Co.,* 14 Am. and Eng. Ry. Cases 677, it was held by the Supreme Court of Massachusetts that " it was for the jury on all the evidence to say whether the defendant held out this crossing as a proper place for all persons, including the plaintiff, to cross, and thus by its invitation induced the plaintiff to cross there."

To the same effect is the case of *Sweeney* v. *Old Colony and Newport Railroad Co.,* 10 Allen 374.    There the court says : " If a person undertakes to do an act or discharge (a duty) by which the conduct of others may be properly regulated and governed, he is bound to perform it in such a manner that those who rightfully are led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of his negligence."

In line is the decision of our own supreme court in the case of *V. & M. Railroad Co.* v. *Alexander,* 62 Miss. 499.

In that case the action was for damages to horse and buggy caused by the partially obstructed highway.    The court held the company liable because, as stated by Judge Campbell, " all were thus invited to cross."

In *Fairman* v. *I. C. Railroad Co.,* 63 Miss. 37, which was a suit for damages for injury to children on the track, the court says : " However negligently the children acted in getting on the track, the defendant was liable if its servants, knowing their position, failed to exercise due care in preventing the accident."

In the case at bar the servants of the defendant knew of the opening at the depot, of its purpose, of its narrowness, of the fact that the passenger train was at a standstill opposite it, and that people were passing through to and from the passenger train.

Reference is made generally to the following additional cases: *Hogan* v. *Chicago, etc., Ry. Co.,* 15 Am. and Eng. Cas. 444; *Bohan* v. *Milwaukee, etc., Ry. Co.,* Ib. 376; Same 379 and cases there cited; 107 Mass. 496; 10 Kan. 426; 46 Ind. 25; 36 Mo. 351; 40 N. Y. 34; 2 Cush. 539; 8 Gray 45; *Hutchinson* v. *St. Paul, M. & M. Railway Co.,* 19 Am. and Eng. Cas. 281; *Ferguson* v. *Wisconsin Central Railroad,* Ib. 285; *Nehlms* v. *Central Pacific Railroad* (Cal.), 14 Am. and Eng. Ry. Cas. 671; *Stewart* v. *Pennsylvania Railway Co.,* Ib. 680.

ARNOLD, J., delivered the opinion of the court.

The instructions given and refused, and the rulings of his Honor, the circuit judge, throughout the trial display accurate comprehension and discrimination as to the principles of law involved in the case. Without darkening counsel by words, and without exploring or attempting to make any contribution to the learning in regard to contributory negligence, it may be said with entire confidence that on the facts produced in evidence by appellee, many of which are not controverted, appellant is answerable for damages in the cause, unless a railroad company in the prosecution of its business may set a trap for people, and after a man has been caught in it and killed or injured, escape liability by assuming the position that he ought to have had more sense and discretion than to have been deceived or misled by the contrivance. If there is any authority which supports such defense we decline to follow it.

Whether appellant was under obligation to make an opening through its freight train for the benefit of the public at or about the depot when it was on the side-tracks between the depot building and the main track, it did in fact make an opening, and had done so habitually before, which was and had been used by the public generally without objection by appellant. The action of

64 Miss.—38.

appellant in this respect amounted to an inducement and invitation to the public to avail of the opening thus made for the purpose of passing across the side-track.    Under these circumstances it was the duty of the railroad company to use reasonable care and prudence to protect persons from injury crossing the track at that point. *Murphy* v. *Boston and Albany Railroad Co.*, 133 Mass. 121; *Sweeny* v. *Old Colony Railroad Co.*, 10 Allen 368; *Stewart* v. *Pennsylvania Railroad Co.*, 14 Am. and Eng. Railroad Cases 679.

Appellee was bound at his peril to act under the circumstances as a reasonable and prudent man, and if acting thus he was injured, he was entitled to indemnity if by ordinary and reasonable care on the part of the railroad company the injury might have been avoided. *Bardwell* v. *M. & O. Railroad Co.*, 63 Miss. 574; *V. & M. Railroad Co.* v. *McGowan*, 62 Ib. 682; *V. & M. Railroad Co.* v. *Alexander*, Ib. 496. This was the view of law submitted to the jury, and the facts warranted the conclusion which they reached.

It cannot be said that the damages of fifteen thousand dollars awarded by the jury are excessive.    We apprehend that but few if any persons would submit to the injury and suffering sustained by appellee for that sum.

If the theory of law propounded by appellees' counsel in his argument to the jury in regard to the obligation of the railroad company to open the freight train, so that any one might pass through when the passenger train was at the depot, was deemed unsound, appellant should have asked instruction from the court for the jury on that point.    There was no such abuse of the privilege of counsel in the matter as to call for correction here.

*There is no error in the record and the judgment is affirmed.*