86
s89
s89

481
19
121

WILLIAM BOYKIN v. STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Trespasser. Instruction.*

Where the deceased was killed while aiding a tenant to remove agricultural products from the leased premises, in violation of defendant's rights, and over the protest of defendant, the landlord, he was a trespasser, and it was error to refuse defendant an instruction to that effect.

2. SAME. *Self-defense.*

Where defendant killed deceased in a difficulty after deceased and his father had made an attempt to remove sugar cane to which they were not entitled from defendant's land, it was error for the court to refuse to charge that, if deceased and his father were trespassers, defendant was entitled to use such reasonable force as might be necessary to prevent the trespass;

that they were not entitled to resist such force, and, if the jury believed they employed means in resisting such force which were likely to produce death or inflict great bodily harm on defendant, he was entitled to meet such resistance, and if in so doing he wounded deceased, from which wound he died, the killing was justifiable.

3. Same.

In a prosecution for homicide, an instruction that if deceased assaulted defendant with a deadly weapon, "and not in necessary self-defense," defendant was entitled to repel such assault by the use of a deadly weapon, and if, in repelling the same, defendant wounded deceased by cutting him with a knife, from which deceased died, then the killing was justifiable, was improperly modified by inserting the words quoted.

4. Same.

In a prosecution for homicide it was error for the court to modify a requested instruction that if deceased's father began an assault on defendant with his fist, and, while thus assaulting defendant, deceased began beating him with a deadly weapon "at a time when defendant was not cutting [deceased] with his knife," then defendant was entitled to defend himself against such attacks, even to the point of taking the life of either or both deceased and his father, if actually or apparently necessary to save his own life or limb, etc., by inserting the words quoted.

5. Same.  *Witnesses.  Instruction.  Disregard testimony.*

An instruction authorizing the jury to disregard the entire testimony of any witness who had willfully and corruptly testified falsely to any fact in the case, without reference to whether such fact was immaterial, collateral, incompetent, or irrelevant, was error.

6. Same.

Where, in a prosecution for homicide, the only witness for the state testified that the combat between witness and defendant had ended before defendant cut deceased, while defendant's witnesses testified that defendant did not commence using his knife or cutting such witness until after deceased had begun and continued to strike defendant with a stick, it was error for the court to charge that if defendant was cutting the witness with a knife, which was a deadly weapon, not in his necessary self-defense, then deceased was entitled to attack defendant

while he was so cutting witness with a knife, even to taking his life.

7. SAME.  *Instructions not to be given out of time.*

Where certain instructions requested by the state during defendant's closing argument were not submitted to defendant's attorneys, and they were given no opportunity either to refer or reply to them, it was error for the court to give them.

FROM the circuit court of Clarke county.

HON. ROBERT F. COCHRAN, Judge.

Boykin, the appellant, and another were indicted for the murder of one Marvin Long. The prosecution was dismissed as to the other person, and Boykin was tried and convicted of manslaughter, and appealed to the supreme court. The facts are fully stated in the opinion of the court.

The court below refused the following instruction asked by defendant:

"The court instructs the jury that if they believe from the evidence the sugar cane testified about was cane which had been banked on Boykin's land by Long as the tenant of Boykin, and that Boykin forbade the said Jackson Long from removing said cane from the premises until such time as a settlement between the parties should be had, and that said Long, together with the deceased, attempted to remove said cane from said premises without the consent of Boykin, then such attempted removal amounted to a trespass, and Boykin had the right to employ such reasonable force as might be necessary to prevent the trespass, and that in such case neither Jackson Long nor the deceased had the lawful right to resist such force. And if the jury believe that either Jackson Long or the deceased, or both, employed such means in resisting such force as was likely to produce death or to inflict great bodily harm on the defendant, then the defendant had the lawful right to meet such resistance; and if, in so doing, the defendant wounded the deceased by cutting him with a knife, from which wound the deceased died,

such killing was justifiable, and the jury should find the defendant not guilty."

Instructions Nos. 1, 3, 19, and 20, as asked by defendant, were as follows:

"No. 1. The court instructs the jury that if they believe from the evidence that Marvin Long assaulted the defendant with a deadly weapon—to wit, a stick—the defendant had the right, under the law of the land, to repel such an assault by the use of a deadly weapon; and if, in repelling such assault, the defendant wounded the deceased by cutting him with a knife, from which deceased died, then such killing was justifiable, and the jury should find the defendant not guilty."

The court below modified this instruction by adding, after the word "stick," in the third line, the following: "And not in necessary self-defense."

"No. 3. The court instructs the jury that they are not called upon to determine in this case which of the parties was the aggressor in the fight between Jackson Long and the defendant. But the jury is to determine whether or not at the time the defendant cut Marvin Long the said Marvin Long was in the act of committing an assault upon the defendant with a deadly weapon; and if the jury believe that, at the time Boykin cut deceased, the deceased was in the act of so assaulting the defendant, then such cutting was justifiable, and the jury should find the defendant not guilty; or, if the jury entertain a reasonable doubt as to whether the cutting was justifiable or not, they should resolve such doubt in favor of the defendant, and acquit him."

The court below modified this instruction by adding after the word "weapon," in the seventh line, the words, "and not in his necessary self-defense."

"No. 19. The court instructs the jury that if they believe from the evidence that Jackson Long began the assault upon the defendant with his fist, and if they further believe from the evidence that, while Jackson Long was thus assaulting defend-

ant, Marvin Long began beating defendant with a deadly weapon, then defendant had a right to defend himself against such attacks, even to the point of taking the life of either or both of the said Longs, if actually or apparently necessary to save his own life or limb; and if the jury entertain a reasonable doubt as to this, they should resolve said doubt in favor of the defendant, and acquit him."

The court below modified this instruction by adding after the word "weapon," in the sixth line, the following: "At a time when defendant was not cutting Jackson with his knife."

"No. 20. Even though the jury should believe from the evidence beyond a reasonable doubt that the defendant was the aggressor in the difficulty between himself and Jackson Long, and even though the jury should further believe from the evidence beyond a reasonable doubt that Marvin Long began beating the defendant with a deadly weapon to prevent the defendant from committing a felony upon Jackson Long, still the said Marvin Long had no right to continue beating defendant after said defendant had ceased such attack upon said Jackson Long; and if the jury believe from the evidence that Marvin Long did so continue to beat the defendant with a deadly weapon, then the defendant had a right to defend himself against such continued attack, even to the point of taking the life of said Marvin Long, if actually or apparently necessary to save himself from great bodily harm; or, if the jury are in doubt as to this, they should acquit."

The court below modified this instruction by adding after the word "weapon," in the eleventh line, the following: "And not in his necessary self-defense."

The fifth and sixth instructions given for the state are sufficiently set out in the opinion of the court.

*Amis & Dunn,* for appellant.

In view of the principal facts of the case, we insist that the

court should have granted the instruction requested by the defendant, which was refused.

Jackson Long, as well as the deceased, was clearly guilty of trespass upon the property of Boykin; and, according to the testimony of Jackson Long himself, he was proceeding to commit further acts of trespass, against the protests of Boykin, at the very instant the fight ensued between himself and Boykin. This being true, even though Boykin may have been the actor in the beginning of the actual combat, he was not the aggressor, and his right of self-defense in the combat depended largely upon this circumstance, and it was the duty of the court to have advised the jury of this lawful right of Boykin by the instruction, as requested. *Ayers* v. *State*, 60 Miss., 709.

In view of the testimony of the defendant and his witnesses, we insist that it was error on the part of the court, and that such error was prejudicial to the cause of the defendant, for the court to modify instructions 1, 3, 19, and 20, as requested by the defendant. By the first instruction the court was asked to inform the jury that if they believed from the evidence that deceased assaulted the defendant with a deadly weapon, the defendant had the right, under the law, to repel such assault by the use of a deadly weapon; and that if, in repelling the assault, the defendant cut the deceased with a knife, from which cut or wound the deceased died, then, in that event, such killing was justifiable, and the jury should find the defendant not guilty. And by the third instruction the court was requested to inform the jury that if, at the very time the defendant cut Marvin Long, he, Marvin Long, was committing an assault upon the defendant with a deadly weapon, then, in that event, Boykin was justifiable in cutting the deceased. Both of these instructions were designed to inform the jury that if the facts therein assumed had been proven, the defendant acted in selfdefense in the killing. and was justifiable. The instruction fairly summarized the facts, as insisted upon by the defendant, and he had the right

to have same given to the jury as presenting his theory of the case, untrammeled by the proviso inserted by the court—to wit, that this would be true unless the jury should believe that Marvin Long's assault upon Boykin was rendered necessary in his own self-defense. The modification in both of these instructions was confusing and misleading, and the effect of the same was to deprive the defendant of a clear-cut enunciation of the law as applied to the practically undisputed facts and in presenting the theory of his defense; and likewise was modification of instructions 19 and 20 by the court confusing and misleading.

Whether the modification of the instructions did more than to merely confuse their meaning, we are not sure, but we insist that, as originally drafted, they fairly presented the defendant's theory of the case. He had the right to have them thus given to the jury, unless, without the modification, the instructions would have been erroneous in announcing the law applicable to the facts of the case. If the state desired a modification of the rule announced by the instructions, it was its privilege to request the court for an instruction on the point. Such course is undoubtedly the better practice. *Mask* v. *State,* 7 Ga., 77; *Archer* v. *Sinclair,* 49 Miss., 343; *Lamar* v. *State,* 64 Miss., 428.

The circumstances under which the fifth and sixth instructions were given by the court, even if both of said instructions should be correct announcements of the law, are sufficient to condemn both of them. This a much stronger case than the *Montgomery Case,* 85 Miss., 331 (s.c., 37 South. Rep., 835).

Whatever the extent of our deference for the presiding judge, we cannot concur in his characterization of the incident as being a frivolous circumstance. Nor do we believe that this court will unite in such conclusion, because it seems to us to be impossible that any unbiased mind can confidently assert that this kind of circumstance, though frivolous it may be to some, did not prejudice the cause of the defendant.

*J. N. Flowers,* assistant attorney-general, for appellee.

As to the giving of instructions five and six asked for by the state at the time they were given, it is sufficient to say that it does not appear that any special bill of exceptions was taken to the action of the court in this regard. It is true that as far as inherent vices of the instructions themselves are concerned, it is sufficient to notice the instructions in a motion for a new trial, and no special exception at the time the instructions are given is necessary. But when it comes to other matters not necessarily of record, this court requires a special bill of exceptions. It is not sufficient to prove on the hearing of the motion for a new trial that an objection was made to some action of the court during the progress of the trial, but the objection should have been made, and the action of the court thereon made of record, as well as the exception taken by counsel for defendant, at the time. It does not appear, even, that there was an exception to the action of the court in overruling objections made by counsel for defendant to the giving of the instructions. At all events, it is not sufficient to prove on motion for a new trial that certain objections were made and exceptions taken which should have been made of record at the time.

Besides, it is impossible to conceive how the giving of these instructions could have done this appellant any harm. The situation at the time was not anything like that shown by the record in the Montgomery case decided recently. That case was peculiar. The unusual situation of the man on trial, and the unusual indictment on which he was being tried, and the dangerous character of the instruction itself, combined to give importance to the action of the court in granting the state the instruction asked for in that case after argument began. No such peculiar situation is shown here. On the other hand, it appears that the jury gave the accused the benefit of every fact which could operate in his favor.

HOUSTON, J., delivered the opinion of the court.

At the April term of the Clarke county circuit court the appellant was jointly indicted with his aunt, Mrs. Garrison, for the murder of Marvin Long. At the next term of said court the case was *nol-prossed* as to Mrs. Garrison. At the March term, 1905, the defendant was tried and convicted of manslaughter, and sentenced to ten years in the penitentiary, from which conviction he prosecutes this appeal, and mainly assigns as error the refusal of one instruction requested by him, the modification of four others, and the granting of two instructions requested by the state.

We think the court erred in refusing the instruction asked by appellant. The evidence for appellant shows that he had forbidden the removal of the sugar cane which had been banked on his premises by Jackson Long (who was his tenant the year before, and the father of deceased) until the accounts between them had been settled, and had posted a notice on the cane bank to that effect; that, on the day of the killing, said Long and his son Marvin went upon the premises of appellant with their wagon to remove this cane situated thereon; that, seeing them coming after it, appellant, who was working in the field near said cane with one McQuirter, went to the cane bank, accompanied by his aunt, Mrs. Garrison, and said McQuirter, and arrived there about the time (perhaps a little before) the Longs did; that, when the two parties first met, they spoke, and there was no manifestation of any unfriendly feeling existing between them. Jackson Long, the only eyewitness for the state, says that when he arrived at the cane pile he (quoting) "noticed a board on it with a note on it, and I asked Boykin what that note meant, and Boykin said, 'It is to forbid you or any one from taking that cane until you pay me for that sack of meal;'" that witness denied owing appellant; and that, when appellant repeated and reiterated that he did, witness said, "You are a liar," and walked up to the appellant, and, while the colloquy was going on, witness (quoting) "got off

of wagon, and was going round to the cane pile with my hoe, to drag the dirt off of the cane pile, to get my cane." As to the above facts there is no substantial, if any, difference between any of the witnesses as to what occurred. In fact, this is virtually so stated with commendable frankness in the brief of the able assistant attorney-general, who, in view of the uncontradicted testimony of two or three witnesses that appellant was a sickly, weak boy all of his life, also admits that "it appears that Boykin was not a strong man." Appellant, his aunt, and McQuirter (the only eyewitnesses except Jackson Long) all swear substantially, with some immaterial differences, that the latter (Long) became angry, and, after calling appellant a liar, struck him with his fist, then caught him by his throat, and, while he was choking him with one hand and striking him in the face with the other, Mrs. Garrison asked Marvin Long to aid her to stop them from fighting; that he replied that he would not, but was "going to beat hell out of Will Boykin with a stick;" and, picking up a heavy hickory walking stick which appellant had carried there with him, but thrown down on the ground before the difficulty began, deceased began to severely beat appellant with it, while Jackson Long continued to choke and strike appellant. Appellant swears that just at that time, when Jackson Long was also doubling him back, choking him, he succeeded in getting his pocketknife from his hip pocket, opened it, and cut him loose from his throat; that he (appellant) ran back from Marvin Long, who continued to follow him up, striking him with the stick, until finally he cut him, exactly how many times he does not know, but that he ceased to cut him as soon as deceased stopped striking him with the stick; that just before this appellant tried to wrench the stick out of Marvin Long's hands. Mrs. Garrison also swore that Marvin Long continued to strike appellant with the stick, and then Boykin cut him. Appellant testified that he did not want or expect or intend to have any trouble with the Longs before going there, in which he is cor-

roborated by Mrs. Garrison and McQuirter; that when Jackson Long, at the very beginning, became angry, he told him he did not desire to have any trouble, and would rather give him the debt. He also testified that both he and Jackson Long were jointly interested in the cane, and that some of it had never been divided. If it was true that he and Jackson Long were jointly interested in this cane, then the Longs, in coming upon his premises to remove it before it was divided, were trespassers; and as the relation of landlord and tenant had existed between appellant and Jackson Long, and as this cane was produced on the landlord's premises, if it be true, as appellant swore, that Jackson Long owed him for supplies furnished, then appellant had a landlord's lien therefor on this cane; and, in attempting to remove same, the Longs were not only guilty of a trespass, but if the removal had been completed, they would have been guilty of a misdemeanor, by express provision of our statutes. Now, whether all this evidence was true or not was for the jury; and we think the appellant was entitled to have his theory of the case, on this phase of it, submitted to them under the instruction asked, which only announced that "if the jury believed from the evidence" certain facts, most of which were uncontradicted (in truth, admitted), it amounted to a trespass on the part of the Longs. Manifestly, these facts upon which this instruction was predicated, if the jury believed them, demonstrated that the Longs were trespassers. Jackson Long swears, and the brief of the assistant attorney-general admits, that the cane was banked, and that the trouble occurred upon appellant's premises, and that the Longs came there to remove it. Indeed, this trespass committed by the Longs was the very origin and cause—the *causa causans,* so to speak—of the whole difficulty which resulted in the death of the deceased. At the very moment that the combat began they were trespassers on appellant's premises, and, over his protest, were proceeding to commit another trespass. Then, if they were trespassers, the instruction only announces that "Boykin

had the right," not to kill the Longs, but "to employ such reasonable force as might be necessary to prevent the trespass;" that they did "not have the lawful right to resist such" reasonable "force;" and that, "if the jury believed they employed means in resisting such reasonable force which was likely to produce death or to inflict great bodily harm on defendant, then defendant had the lawful right," not to kill them, but only "to meet such resistance, and if, in so doing [that is, in meeting the resistance], the defendant wounded the deceased by cutting him with a knife, from which wound he died, such killing was justifiable." We think the instruction announced, in well-guarded language, the rights of the defendant under the law as applied to this competent and material evidence which had been adduced, and that its refusal was error, under the principles enunciated in *Ayers* v. *State,* 60 Miss., 709, and other cases.

We deem the modifications made by the court of instructions Nos. 1, 3, 19, and 20 for appellant erroneous. We think the charges, as framed and asked by appellant's counsel, correctly announced the principles of law as applied to the competent, pertinent evidence, and his theory of the case; and, as held in *Lamar* v. *State,* 64 Miss.; 428, and other cases, this was a right which the law guaranteed him, and the modifying, restrictive clauses inserted by the court, by injecting other propositions into them, might, and probably did, serve to confuse and mislead the minds of the jury, and to deprive the defendant of a clean, clear-cut enunciation of the law as applicable to his theory of self-defense. As this case must be reversed, we will only add this observation to this branch of it: That, where the prosecution desires a modification of the principles of law as set forth in defendant's instructions, the better practice is for it to ask the court for a separate instruction. *Mask* v. *State,* 36 Miss., 77; *Archer* v. *Sinclair,* 49 Miss., 343.

In our opinion, the fifth instruction granted the state is plainly and palpably erroneous, in failing to embody the idea

and to inform the jury that the fact upon which the untruth or falsehood is stated must be material. As given, it told the jury that they might, in the consideration of the case, wholly disregard the entire testimony of any witness who, they believed, from the evidence, beyond a reasonable doubt, had willfully and corruptly testified falsely to any fact in the case, no matter how immaterial or collateral, or even incompetent or irrelevant, that fact might be. So far as our research extends, there is a unanimity in the authorities in all jurisdictions on the proposition that, in order to authorize or justify the jury to reject the whole testimony of a witness on the ground that he has willfully and corruptly sworn falsely in the case, such false testimony must have been in relation to a material fact. In Am. & Eng. Ency. Law, vol. 30 (2d ed.), p. 1072, under the general title of "Witnesses" and the subtitle of *"Falsus in uno, falsus in omnibus,"* this language is used: "To authorize the application of the doctrine, it is not sufficient that the testimony of the witness is in some particular simply untrue or that he even willfully swore falsely to an immaterial fact. It must appear that he has willfully and knowingly sworn falsely to a material fact." Citing many decisions from 23 states, and two cases from the circuit court of appeals of the United States. See also 29 Am. & Eng. Ency. Law (1st ed.), p. 780, and cases cited. The principle enunciated by this court in *Shaw* v. *State,* 79 Miss., 21 (30 South. Rep., 42), cited by the assistant attorney-general, does not, in our opinion, militate against this doctrine. None of the other instructions given defendant related to either of these two particular phases of the case, or the principles of law applicable thereto. Most of them were very general, and many only announced abstract propositions. It is no answer to say, as contended by the assistant attorney-general, that the court and the jury pass upon the materiality of the evidence, and that it is presumed that every fact allowed to go to the jury is material. The evident reply to such a contention is that the question here is as to the credibility of witnesses

and the weight to be attached to their evidence, of both of
which the jury are the sole judges. The court only decided
upon the relevancy and competency of the evidence, and it
may, and frequently does, admit evidence which, though rele-
vant and competent, does not prove to be material in the con-
sideration of the case. It is but simple justice to the accom-
plished trial judge to say in this connection that it appears
from his own statement in the record, made on a motion for
a new trial, that in the original draft of this instruction, as
submitted to and given by him, the word "material" did ap-
pear, and the cause of its inadvertent omission in the instruc-
tion, as it was finally read to the jury, is not fully developed
or clearly shown by the record before us, thus showing—in-
ferentially, at least—that he recognized the eminent propriety,
if not legal necessity, for this qualifying word in the charge.
The assistant attorney-general, in his brief, concedes that it is
usual and proper to use this restrictive word in such charges,
but contends that its omission could work no harm, except un-
der peculiar circumstances—in other words, that, while it was
error, it was not fatal, reversible error. We cannot affirm that
this erroneous instruction did not mislead the jury and preju-
dice the cause of appellant. On the contrary, from this record,
we can see how it might, and probably did, do so. In *McDon-
ald* v. *State,* 28 South. Rep., 750, the court reversed and re-
manded the case alone because of the giving of the following
instruction for the state—"If any witness has made statements
out of court different and contradictory from those made in
court in this case, then you may disregard the whole testimony
of such witness or witnesses, if you see proper  .  .  ."—
saying: "It does not even qualify by requiring the statements
out of or in the court to be material. It would operate upon
the mind of the average juror as an injunction not to believe
anything the defendant said, if some one testified that he any-
where in his testimony contradicted anything he had said out-
side. It is dangerous thus to experiment on the exploded doc-

trine of *'falsus in uno,'* etc. Such efforts to get some advantage from the old doctrine must lead to numerous reversals."

Nor do we think the charge given the state numbered 6 in the record should have been granted, in view of the facts of this case. It instructs the jury that if the defendant was cutting Jackson Long with a knife, which was a deadly weapon, not in his necessary self-defense, then Marvin Long had the lawful right to attack the defendant while he was so cutting Jackson Long with a knife, even to the taking of his life. Aside from any other objection, it is clearly subject to the criticism that it assumes as true a material fact prejudicial to defendant, of which there is no evidence—to wit, that the defendant was cutting Jackson Long with a knife when Marvin Long attacked defendant. Now, Jackson Long, the only witness for the state relative to this point, swears that the combat, and even scuffle, between himself and defendant had entirely and completely ended, and that defendant had turned him loose and quit, not only before defendant cut deceased, but even before deceased had alighted from the wagon. On the other hand, the appellant and his two witnesses swear in effect, if not in so many words, that appellant did not commence using his knife or cutting Jackson Long until after deceased had gotten off of the wagon, grabbed the stick, and begun and continued to strike Boykin with it. So that, in either view, the instruction assumes the existence of a state of facts which the evidence both for the state and the defendant shows was not proven. And this court has settled beyond cavil or controversy, by repeated adjudications, that an instruction, in the absence of evidence upon which to predicate it, is erroneous, and that such an instruction, not based upon evidence, is fatally erroneous, if by any means it might mislead the jury. *Oliver* v. *State,* 39 Miss., 527; *Frank* v. *State, Id.,* 705; *Fore* v. *State,* 75 Miss., 727 (23 South. Rep., 710) ; *Cooper* v. *State,* 31 South. Rep., 580; *Smith* v. *State,* 75 Miss., 542 (23 South. Rep., 260) ; *Spradley* v. *State* (Miss.), 31 South. Rep., 534; *Rogers* v. *State,*

82 Miss., 479 (34 South. Rep., 320); *Cothran* v. *State,* 39 Miss., 541. Due objections and exceptions were taken to the action of the court on all of these instructions.

As shown by the evidence and the bill of exceptions taken on the motion for the new trial, objection was also made to said fifth and sixth instructions on account of the circumstances under which they were granted. The prosecuting attorney presented the instructions to the court for the first time during the closing argument for the defendant, and the court gave them. Counsel for defendant testify that they were in utter ignorance of their having been granted until after they had concluded their arguments, and that their attention was called to the same for the first time when the district attorney began to read them to the jury in his closing argument, whereupon they objected to his reading said instructions on the ground that they were given by the court while counsel for defendant was making the closing argument, and were never submitted to them, and they knew nothing of their existence, which objection was overruled by the court, and the district attorney proceeded to argue and comment on them without even offering to defendant's counsel the right or opportunity to reply thereto or to discuss said instructions, to all of which due exceptions were taken. This evidence brings the case squarely within *Montgomery* v. *State,* 85 Miss., 331 (s.c., 37 South. Rep., 835), where this court condemned exactly the same practice, and reversed and remanded the case on account thereof. The facts in the instant case make it even stronger than in the Montgomery case; for there, when the defendant's counsel objected to the reading of the instruction, the state's counsel offered him the right to answer it or reply thereto. As this is a question of importance, which arises constantly in the trial of causes, and which, if the proper practice is not observed, will necessitate frequent reversals, and the consequent entailment of costs on the state and other litigants, we take occasion to commend and reaffirm the announcement of the Montgomery case relative to the proper prac-

tice as to instructions, especially in cases where the life or liberty of the citizen is involved and where the state always has the closing argument. We depreciate any deviation from the rule as therein announced. In our opinion, it will be conducive to a due and proper administration of justice, and certainly be fair to court and to counsel, as well as to defendants, the state, and all litigants, to require that opposing attorneys shall present to each other the charges which they intend to request, at some time prior to final action thereon by the court, in order that either side may, if they so desire, request additional instructions applicable to their theory, or may make objection to the court to the instructions given or requested by their opponent, and may reserve due exceptions to the action of the court in the premises. This will not only be fair to the litigants and the attorneys, but to the court, who will thereby be given an opportunity to modify or refuse any instruction, or to correct any error which he may have committed, before the instruction is finally passed on by him and read to the jury. In the haste and hurry almost necessarily incident to a *nisi prius* trial, any judge, no matter how quick his perception or keen his discrimination or deep his legal knowledge, will naturally and necessarily commit errors if many instructions are presented to him during the closing arguments, without opportunity for objection from opposing counsel, which errors might be avoided or corrected if instructions were seasonably presented and such opportunity given counsel for each side.

*It results that the case must be reversed and remanded.*