DEMENT *et al. v.* SUMMER.

(Division B. Feb. 10, 1936.)

[165 So. 791. No. 32072.]

Jacobson & Snow, of Meridian, for appellants.

M. V. B. Miller, of Meridian, for appellee.

Argued orally by **Gabe Jacobson** and **E. L. Snow,** for appellant, and by **M. V. B. Miller,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee was seriously injured by being struck at the right-angled intersection of Sixteenth street and Twenty-third avenue in the city of Meridian, in the daytime, by an automobile driven northward on said avenue by the appellant Sarah Dement, an adult daughter of the other two appellants. We quote from the brief of appellants as. follows: ''The testimony of Miss Dement, driver of the car, and all the other witnesses who saw the accident, was succinctly this: That when they first saw the appellee he was standing in the street near the curbing. He had stepped off the sidewalk and was standing in the street looking for cars.'' It is undisputed that this was at the street intersection aforesaid, and Miss Dement stated on cross-examination that she saw the appellee standing in the street near the curbing at the street intersection just before she arrived in front of the Kimbrell house, which appears in the evidence to be about one hundred feet south of the center of the intersection. The testimony is that the automobile was traveling at the rate of from fifteen to twenty-five miles an hour and that appellee was struck when he was near the center of the pavement of Twenty-third avenue and while attempting to cross said avenue, the paved part of the avenue being thirty-three feet wide.

We have stated in the foregoing paragraph only enough of the facts to disclose the pertinency of what we shall hereafter say in regard to the argument to the jury. The stated facts, when taken in connection with the further facts developed in the record, are such that the peremptory instruction requested by appellant Sarah Dement was properly refused; and since the request for that instruction was made jointly in her behalf and that of her mother, the court was not required to separate them. We presume the separate or respective liability as between the daughter and mother was not

even argued to the trial court, as it has not been here. We leave the question whether Mrs. Dement shall be entitled to a peremptory instruction entirely open, and for determination on a new trial, if such an instruction shall then be separately requested by her.

The separate request for a peremptory instruction in behalf of the appellant J. V. Dement should have been granted. To refuse it was to apply the "Family Purpose Doctrine," which has been definitely rejected in this state. Smith v. Dauber, 155 Miss. 694, 125 So. 102; Harrington v. Gough, 164 Miss. 802, 145 So. 621; Culpepper v. Holmes, 170 Miss. 235, 154 So. 726, and other cases cited in those opinions. Nothing that was shown here was sufficient to take the case out of these holdings, or to make either the adult daughter or the wife the servant or servants of the father and husband, who was not present and had no part in the alleged tort.

The assignment of error upon the refusal of the court to grant a new trial upon the newly discovered evidence presents a close question. Such a ground for a new trial is not favored by the courts, should be subjected to the closest scrutiny, and is to be sustained only in an extremely exceptional case when it has been made clear that the interest of justice definitely requires it. We have concluded, however, taking the entire transcript of the trial, that this case comes within the allowance of the rule in the interest of justice, and that the motion for a new trial should have been sustained. We do not pursue the discussion of this point further, because of the length necessary to properly deal with the next succeeding point.

The third point raised is one which has in some form been frequently presented in very recent years, and for that reason we have determined to deal with it more fully at this time, and so far as the present record will permit. The point has reference to the argument made to the jury by plaintiff's attorney, wherein, without re-

questing any instructions from the court and when not covered by any instruction granted at the request of defendants, the attorney for plaintiff stated and argued to the jury a vital point of law which, as stated by him, was erroneous in substance, and which, if the same statement of the law as made by plaintiff's attorney and in the form as stated by him had been contained in a written instruction granted by the court, would have amounted in practical effect to a peremptory instruction in behalf of the plaintiff, and would have constituted reversible error.

We have already noted, in effect, that the overwhelming weight of the proof is that the plaintiff had first reached the crossing and had proceeded a foot or two into the street and was looking to see if he had an open way to get across, and this was before the automobile had reached that crossing. In his argument plaintiff's attorney opened as follows:

"May it please the Court and you gentlemen of the jury: This is a case that Mr. Summer is willing for any twelve men to decide. We are not only willing for the first twelve men that came in this box to decide this case, but he is willing to rest his right to recover without a single instruction to this jury except the instructions asked for by the defendants. Now gentlemen, when a case is that plain there is not much use in using much time, it seems to me, in arguing. We are willing to rest our right to recovery without a single instruction except the instructions granted for the defendant. There is not a single instruction asked for by Mr. Summer in this lawsuit.

"Gentlemen, what are the theories in this case? I say under the law if you believe the testimony of Miss Dement and her very close and personal friends that went on the stand—now what is her statement about it? She says that when she was at Dr. Ray's down there she saw this man standing in the street, looking for a

chance to cross in safety. She saw that old man when his head was turned away from her, looking to the north in the opposite direction from the one she was driving. She didn't take her eyes off of it.

"Why, gentlemen, it is a law of the State that the first to the crossing has the right of way. It wasn't a case of anticipating the presence of others, and that is the duty of anybody that drives an automobile to do that."

At this point counsel for defendants did not object or interrupt upon the statement that it is the law of the state that, in regard to pedestrians and automobiles, the first to the crossing has the right of way. It is quite probable that the attorney for the defendants did not at once realize or appreciate what bearing this would have or what the attorney for the plaintiff would make out of the statement or how he would develop it as the argument progressed. But after what now appears in the transcript as at a few paragraphs following the quoted opening, the attorney for the plaintiff reached the point where a striking summary or application was made by him in the following language: "Why, men, when you see an old man standing on the side of the highway, cane in hand and his locks as white as the driven snow, and you are half a block away and you see the old fellow standing there trying to see a way clear to cross, and you have seen him and he is half a block away and then you run over him and you tell me you are without blame? Would an ordinarily prudent man seeing those things and situated like she was, knowing that the man had the right of way there, that he was liable to leave that curb at any time—no. Why, gentlemen, the law requires you to stop then as still as this courthouse if ordinary prudence and caution—"

At this point the attorney for the defendants interrupted and objected in the following words: "If the court please, I hate to interrupt but we object to the

argument of counsel that the gentleman had the right of way there. There is no law to that effect, no law has been given or requested to that effect."

To which the attorney for plaintiff replied: "Well, that is just common sense." And the attorney for the defendant at once objected to that statement also. The court responded: "Gentlemen, the jury will have the instructions of the court, all that's been requested." Thereupon the attorney for the defendant moved as follows: "We move the Court to instruct the jury that the gentleman did not have the right of way across the intersection and that there is no law to that effect." To this motion the court responded: "You have the instructions of the Court, gentlemen, and you will be governed by those instructions." Whereupon the attorney for plaintiff resumed his argument in the following language: "Well, gentlemen, the law of reason and the law of common sense—how long is a pedestrian going to be required to wait when he sees one down the street half a block and waits for it to pass and by that time another one is in the street? Brother, he would stay there until the traffic gets off the street, if that isn't the law, wouldn't he? That's common sense." At this point the attorney for the defendant renewed his objection in the following words: "We object to that statement and ask the Court to instruct the jury to disregard it." To which the court responded, "Overruled."

Thus the appellants have taken the proper procedural steps as laid down in Brush v. Laurendine, 168 Miss. 7, 12, 150 So. 818, in order to challenge the propriety of an argument to the jury on the facts but we shall now point out that another and a precedent step is necessary to be taken when the challenge is upon improper argument upon the law.

Under section 31, Constitution 1890, it is ordained that "the right of trial by jury shall remain inviolate." A trial by jury in a court of superior original jurisdiction

is universally held to mean a jury of twelve qualified persons who shall decide the facts under the superintendence of a trial judge, who shall have the sole power to declare the law. The Legislature under that constitutional provision may regulate the manner and method of instructing the jury by the court upon the law, but it cannot prohibit the exercise of the power to charge the law nor transfer it to the attorneys in the case or to any other person than the trial judge; and, of course, since a statute so prohibiting the power, or undertaking to transfer it, would be invalid, no rule or course of practice would be lawful which would accomplish the same end.

Our statute (Code 1930, sec. 586) which prohibits the judge to charge the law except upon the written request of one of the parties went, therefore, to the extreme limit of legislative power in the regulation of instructions to the jury. We must interpret the statute in the light of constitutional limitations on the legislative authority, and must declare that it was not the legislative purpose to transfer the power to instruct jurors as to the law to any person other than the trial judge, and that no rule or custom or allowance of practice can stand final scrutiny here, which would so operate, except by the consent of the parties.

Accordingly, it was said by us in the recent case Chadwick v. Bush, 163 So. 823, 824, that: "under our constitutional system in this state, jurors are the judges of the facts, and the trial judge, throughout the entire trial, is the sole judge of the law in so far as the judge gives the law in written instructions. Insofar as the trial judge pronounces the law to the jury by written instructions, the jury must follow the law as thus given, or else violate their oaths." In Bangs v. State, 61 Miss. 363, it was said, and has often been repeated, that the method of communication between judge and jury upon the law of the case is by written instructions, and

that the presiding judge is the authorized agency by which that information shall be supplied.

The aforementioned considerations have advanced us to the point from which it is necessary to consider only two other cases, already for some time among our decisions. The first is Louisville, N. O. & T. Railroad Co. v. Thompson, 64 Miss. 584, 594, 1 So. 840, wherein it was remarked by the court that if counsel for one side argue a matter of law not covered by the written instructions, and which opposing attorney deems unsound, he should request an instruction to meet and overthrow the said unsound legal argument. It is at once to be perceived, however, that the observation made by the court in that case would, as a practical matter, work a considerable hardship on opposing counsel, so that in some cases it might require two attorneys on the same side, one to hear the argument and make notes of the transgressions upon the privileges of argument as to the law, while the other engages in composing and writing instructions to meet those transgressions.

But the court did not permit the practice to remain in any such unsatisfactory and impractical attitude. Later, and in the case, Oakes v. State, 98 Miss. 80, 85, 94, 54 So. 79, 80, 33 L. R. A. (N. S.) 207, which was a prosecution for libel and in which the appellant contended that under section 13, Constitution 1890, the jury was the judge both of the law and the facts, and accordingly undertook to argue the law to the jury and to read law books to the jury in support of his legal argument, this court denied the right to read law books to the jury, and expressly approved the following instruction: "The court charges the jury that all the law to be considered by them in reaching a verdict in the case is contained in the written instructions given by the court, and upon these instructions and the evidence alone should their verdict be made."

So, in any case, when counsel for one side has obtained

no instructions, or instructions which do not cover vital features, all that counsel on the other side has to do, to prevent his opponent from attempting to instruct the jury in the guise of argument upon points not covered by the written instructions, or from substantially departing from the written instructions as given, is to request and obtain the quoted and approved instruction taken from the Oakes case, supra. To illustrate, in the case now before us, counsel for defendant should have obtained such an instruction either before the opening of the argument, and far preferably so, Maxey v. State, 140 Miss. 570, 578, 106 So. 353; or else when the plaintiff's attorney had entered upon the extraneous legal argument later objected to, and as soon as defendant's attorney realized what was sought to be made of the argument, defendant's attorney should have objected and asked that the argument be suspended until he could write and present to the court and to counsel on the other side the following instruction: ''The court instructs the jury that, as regards automobiles and pedestrians, it is not the law of this state that the first to reach a street crossing has the right of way thereat; and the court further instructs the jury that all the law to be considered by them in reaching a verdict in this case is contained in the written instructions given by the court, and upon these instructions and the evidence alone should their verdict be made.'' By such an instruction the attorneys for both sides will be confined to the written instructions as completely as they are to the evidence of record, and if either of them go out of or beyond the written instructions, the point may be made and reserved exactly as in cases of improper argument on the facts, and as laid down in Brush v. Laurendine, supra.

It is urged that to allow interruptions and objections, such as we are here discussing, during the progress of the argument of counsel, would be to permit the argu-

ment to be cut to pieces by such interruptions and objections often interposed for the deliberate purpose to confuse and to destroy the continuity and force of the argument. There are three answers to this contention: First, the same contention would have equal force and bearing in respect to interruptions and objections interposed against improper arguments on the facts, and the right to interrupt and object in that regard has long been established in our decisions. Second, counsel for both sides know, or ought to know, what argument they respectively intend to pursue and can easily forestall such interruptions by obtaining instructions, before the argument begins, to cover the line of argument which they intend to present. And, third, when counsel have procured instructions, or the other side has procured them, covering the substantial portions of the argument, and in the argument counsel stays within the record both as to the instructions and the facts, any interruptions by the other side will harm only the objector in the minds and eyes of the average juror. Every practitioner knows of the effect of unsustainable and contentious objections and that such interruptions, especially if persistent, redound nearly always to the distinct hurt of the objector, and to the advantage of the other party.

We make one final observation: It may be said that during the course of the argument, propositions of law will arise and will be perceived as pertinent and material to the case, but which had not previously occurred to counsel and which he ought to be allowed to present to the jury; or that upon objections made, counsel will realize for the first time that he is traveling beyond the record of the law as contained in the written instructions. In either of such events, counsel above referred to can then and there request a written instruction, or instructions, to cover which the court will grant if correct and when requested in such manner and time as the

court in sound discretion will deem just to be allowed. But see Montgomery v. State, 85 Miss. 330, 337, 37 So. 835, and Boykin v. State, 86 Miss. 481, 38 So. 725.

Reversed and remanded.