CITY OF MERIDIAN v. DAVIDSON.

In Banc. May 14, 1951

No. 37905 (53 So. (2d) 48)

Dunn & Singley, for appellant.

Gerald Adams and M. V. B. Miller, for appellee.

McGehee, C. J.

This appeal presents the unique, or rather incongruous, problem of whether a jury in the circuit court can intelligently determine when a civil service commission of a municipality has acted in "good faith for cause" in discharging a member of its fire department, where the jury does not have before it the same evidence on which the commission acted, but hears additional testimony on the same issues of fact passed on by the commission. And it necessitates a reexamination of some of the questions involved in McLeod v. Civil Service Commission, 198 Miss. 721, 21 So. (2d) 916; City of Jackson v. McLeod, 199 Miss. 676, 24 So. (2d) 319; and the principle announced, although under a different statute, in California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So. (2d) 542, 28 So. (2d) 120 and other cases defining and limiting the issue to be determined in the circuit court on appeals from decisions of executive, legislative or administrative agencies.

The judgment of the circuit court appealed from herein, based upon the verdict of the jury, reversed a decision of the Civil Service Commission of the City of Meridian

which had affirmed the action of George J. Roark, as City Manager, in discharging the appellee, R. R. Davidson, on December 27, 1949, as a civil service employee of the fire department of the city. Theretofore on December 24, 1949, this employee was suspended by the chief of the fire department, P. M. Pigford, pending investigation of specific charges thereafter preferred by him against the employee, and with the result that on the said 27 day of December 1949 the city manager advised the employee as follows:

"Based upon information furnished me and charges that have been filed against you by Fire Chief P. M. Pigford, this is to advise you that his recommendation of suspension and dismissal is hereby approved and ordered and the following specific charges are being made of record:

"1. Being under the influence of liquor or drug while on duty at or about 9:15 a. m. December 24, 1949, at the No. 1 Fire Station, City of Meridian, Mississippi.

"2. Committing an assault upon Captain J. E. Terry.

"3. Insubordination to superior officers.

"4. Being discourteous to a fellow employee."

Thereupon, the employee made his demand in writing for an investigation of the charges by the civil service commission of the city, since he was entitled to the hearing before such commission by virtue of the provisions of Chapter 208, Laws of 1944.

Section 9 of the Act reads as follows:

"The tenure of everyone holding an office, place, position or employment under the provisions of this act shall be only during good behavior, and any such person may be removed or discharged, suspended without pay, demoted or reduced in rank, or deprived of vacation privileges, or other special privileges, for any of the following reasons:

"Incompetency, inefficiency, or inattention of duty; dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public, or a fellow

employee, or any other act of omission, or commission tending to injure the public service."

Within the time required by law, a hearing was had before the civil service commission, at which the accused appeared in person and represented by counsel, and was presumably given an opportunity to fully answer the charges by his own testimony and that of any other witnesses he desired to introduce to contradict the testimony of the witnesses called by the city to sustain them. After hearing the testimony of witnesses pro and con, the commission entered its order reciting, among other things, that "it appearing that on December 27, 1949, the City Manager of the City of Meridian, George J. Roark, dismissed the said R. R. Davidson and filed written accusations" against him, enumerating them as hereinbefore set forth, and that "a full and complete investigation and public hearing having been had and numerous witnesses examined and the Board of Civil Service Commissions being fully advised in the premises finds that in its estimation the evidence is conclusive and sustains the written charges made against the said R. R. Davidson on December 27, 1949 . . . The action of the City Manager in suspending and discharging or dismissing the said R. R. Davidson as an employee of the Fire Department of the City of Meridian is therefore affirmed and approved."

Thereupon, an appeal was taken to the circuit court of the county, where a trial was had before the jury, when several witnesses testified who admittedly did not testify at the hearing before the civil service commission, and it does not appear from the record before us as to whether or not all of the witnesses who did testify before the civil service commission had thereafter testified again in the circuit court.

Section 10 of the Act provides, among other things, that "The investigation [before the commission] shall be confined to the determination of the question of whether such removal, suspension, demotion or discharge

was or was not made for political or religious reasons and was or was not made in good faith or cause. After such investigation the commission may, if in its estimation the evidence is conclusive, affirm the removal, or if it shall find that the removal, suspension, or demotion was made for political or religious reasons, or was not made in good faith for cause, shall order the immediate reinstatement or re-employment of such person in the office, place, position, or employment from which such person was removed, . . ." And said section further provides that "If such judgment or order be concurred in by the commission or a majority thereof, the accused may appeal therefrom to the circuit [court] of the county wherein he resides." In regard to such appeal, it is provided that there shall be "a written notice of appeal, stating the grounds thereof, and demanding that *a certified transcript of the record* and of all papers on file in the office of the commission affecting or relating to such judgment or order, be filed by the commission with such court. The commission shall, within ten days, after the filing of such notice, make, certify and file such transcript with such court. The said circuit court shall thereupon proceed to hear and determine such appeal and the accused shall have the right of trial by jury; *provided, however, that such hearing shall be confined to the determination of whether the judgment or order of removal, discharge, demotion or suspension made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds.*" (Italics ours.) In his notice of appeal, the employee did not state that he desired an appeal on the limited issue last above set forth, but stated: "The ground of which (appeal) being that the evidence was not conclusive against him on the question of whether or not he was discharged in good faith for cause *either by Fire Chief P. M. Pigford or Mr. George Roark, City Manager;* . . ." (Italics ours.)

On appeal to the circuit court the issue is not whether the chief of the fire department or the city manager acted in good faith for cause, but whether the commission acted in good faith for cause after a hearing on all of the testimony pro and con, a hearing at which the employee was called upon the first time to answer the charges against him. Nor was the jury in the circuit court required, under the Act or the instructions given by the court, to believe that the evidence of guilt was conclusive when heard by the commission, but whether or not the commission acted in good faith for cause in believing the evidence to be conclusive which it had heard in support of the charges, as against the evidence heard by it to the contrary.

However, no point was made in the circuit court, and there is no assignment of error here, as to whether or not the appeal from the commission was properly perfected in that particular. The appeal having been treated in that regard in the circuit court as one taken in accordance with the Act, we shall so treat it here so far as that point is concerned for the purpose of the present appeal to this Court.

The employee demanded that a *certified transcript of the record* and all papers on file in the office of the board of civil service commissioners be filed by the commissioners with the circuit court, as required by the Act in question, but the testimony taken before the civil service commission was neither transcribed by a reporter nor filed with the clerk of the circuit court. Therefore, the jury in the circuit court, which was confined by the provisions of the Act to the determination of the issue of whether the judgment of the commission appealed from "was or was not made in good faith for cause", had no means of knowing on what testimony the commission had acted when it approved and affirmed the action of the city manager in discharging the employee on the charges preferred against him.

In determining that the civil service commission had not acted in good faith for cause, the jury in the circuit court was necessarily influenced in its decision by the testimony of the additional witnesses when rendering its verdict in favor of the employee. Then too, it was essential that the jury should know whether or not all of the witnesses who did in fact appear before the civil service commission were being likewise called to testify to the same facts before the jury, if the jury was to intelligently determine the issue of good faith on the part of the commission when the latter reached the conclusion on the evidence before it that the employee had been guilty of the conduct complained of. Otherwise, the jury was called upon to decide an issue which was impossible of determination; that is to say, it could not, with proper justification, have found that the commission did not act in good faith on the basis of testimony that the commission did not hear.

Moreover, it is conceded by counsel for the employee, and it is manifestly true, that the same testimony could not be produced before a jury in the circuit court from the memory of the witnesses. And quite naturally they would be asked additional questions and about other material facts in regard to the truth of the charges relied on. Then too, some of the witnesses may die or otherwise go and remain beyond the jurisdiction of the court pending the appeal and trial—witnesses on whose testimony the commission may have chiefly relied and reached its conclusion in good faith. Thus, the need to have the testimony taken before the commission and transcribed for use on the appeal to the circuit court is self-evident.

We think that the foregoing considerations make it necessary that we now overrule that portion of the decision in the case of McLeod v. Civil Service Commission, 198 Miss. 721, 21 So. (2d) 916, 917, wherein the action of the trial court was affirmed in sustaining a motion to strike from the record the transcript of the evidence heard by the civil service commission, and

wherein the Court said: ''The statute does not provide for the making of a transcript of the evidence before the Civil Service Commission, a part of the record on an appeal to the Circuit Court, but expressly provides that 'the accused shall have the right of trial by jury;' i. e., a trial de novo before a jury under the guidance and control of the trial judge, each of these branches of the court discharging the same functions that it always does in trials therein.''

It would have been beyond the power of the Legislature to grant a trial de novo in the sense of foisting upon a court and jury the performance of nonjudicial functions, that is to say in the sense of permitting the court or jury to substitute their own judgment for that of the civil service commission when the latter had exercised purely an executive function. In the case of California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So. (2d) 542, 544, 28 So. (2d) 120, it was said: ''A trial de novo, within the common acceptation of that term, and as defined in the case of Knox, Attorney General v. L. N. Dantzler Lumber Co., 148 Miss. 834, 114 So. 873, and other decisions of this Court, means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken.'' Such a trial is beyond the constitutional power of the Legislature to order where there is to be reviewed in the circuit court the action of a commission in the exercise of a purely executive or administrative function. In order that we may uphold the constitutionality of the Act in question, it is essential that the circuit court be limited, as was done by the express language of the Act, to the judicial function of determining whether or not the judgment of the commission had such a basis in substantial evidence as not to affirmatively show that the commission had acted in bad faith or without cause,

and on which issue the employee carried the burden as appellant to the circuit court.

In the case of McLeod v. Civil Service Commission, supra, this Court upheld the constitutionality of the Act in question without pointing out its redeeming feature on the issue of its alleged constitutional invalidity. But in the second McLeod case, styled City of Jackson v. McLeod, 199 Miss. 676, 24 So. (2d) 819, 320, the philosophy of the decision, in again treating the Act as being constitutional and sustaining the jurisdiction of the circuit court, is based upon the fact that the hearing on such appeal ''shall be confined to the determination of whether the judgment or order of removal, discharge, demotion or suspension made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds.'' That is to say, the circuit court would not be permitted to determine the guilt or innocence of the employee of the charge or charges against him, since the fact that the circuit court may disagree with the commission as to the guilt or innocence of the employee would no more necessitate a finding that the commission had not acted in good faith and on the basis of what reasonable men could deem a sufficient cause than our disagreement with the conclusion of a chancellor on an issue of fact would impute bad faith to him. The fact that we may think the weight of the evidence is contrary to his finding does not even require a reversal, unless he is manifestly wrong, and furnishes no basis in itself alone for an inference of bad faith on the part of the trier of the facts, whether an executive or administrative agency, a jury or a trial judge.

The opinion on the second appeal of the McLeod case, supra, also pointed out that ██ ██ a municipal council in employing and in discharging municipal employees is acting in an executive or administrative capacity, and that the civil service commission in its investigation under the cited Act, as the agent of the city, is moving

within the ambit of the same function. Therein the Court held that "The Legislature could not confer on a circuit court or any other judicial court the authority to appoint or to discharge city employees . . . and as it could not do so directly it could not do so by the indirect device of an appeal, and as already pointed out the Legislature has been careful not to do so in the cited Act." The procedure in the instant case would reinstate the discharged employee. In discussing the limited issue to be tried in the circuit court of whether or not the commission had acted in good faith for cause, the opinion further pointed out that "To that extent only would or could the issue become a judicial question." And the Court held: "It was not competent, therefore, on the appeal, for the Circuit Court and its jury to convert themselves into an administrative body and to become a civil service commission with authority as if original to determine whether to the minds of the court and jury there was cause for the dismissal in this case. The Constitution which divides the powers of government into three separate departments, neither to usurp the authority of the other, stands forth and forbids."

In the first McLeod case, the trial judge decided the case without a jury, and on the second appeal the Court set aside the verdict of the jury for the employee and held that the city was entitled to a peremptory instruction or to a judgment notwithstanding the verdict; and we were not therefore confronted on either of those appeals with the unique situation presented by the record now before us, and from which we are unable to determine whether or not a different case was made in the circuit court from that made before the commission in view of the additional testimony introduced.

At any rate, it was held in California Co. v. State Oil & Gas Board, supra, though involving the construction of a statute much at variance with the one now before us in substantial particulars, that "to allow an appellant to present to the Circuit Court a different state of case

or one based on additional facts would merely tend to becloud the issue as to whether or not the administrative body had based its decision on substantial evidence, had acted arbitrarily or capriciously, beyond its power, or violated some constitutional right of the party affected thereby." And it was further stated that the only sound, practicable or workable rule that can be announced is to hold that ▮▮ ▮ the court to which the appeal is taken from an administrative agency shall only inquire into whether or not the judgment appealed from is reasonable and proper *according to the facts disclosed before the board,* that is to say, whether or not its decision is supported by substantial evidence or is arbitrary or capricious, etc., or in other words whether or not it was made in good faith for cause.

In his specially concurring opinion in that case, Justice Griffith stated that "The essential nature of such a review is such that it must be of what the Board had before it at the time it made its order. It would be an incongruity as remarkable to permit another and different record to be made up on appeal to the circuit court as it would be to allow another and a different record to be presented to this Court on an appeal to it. The question is, and must be, what did the Oil and Gas Board have before it, and all this the majority opinion has well and sufficiently pointed out." He then stated that "except for the opinion on the first appeal in the McLeod case," he would have voted to affirm the judgment appealed from, wherein the circuit court had dismissed the appeal from the judgment of the oil and gas board, and evidently for the reason that the trial judge could not know on what facts the board had acted, unless he had been furnished a transcript of the evidence.

The controlling opinion in the California case was not entirely satisfactory to the writer thereof nor to anyone else, except that we were satisfied with what was announced in the language hereinbefore quoted therefrom, and that we were justified in striking down as uncon-

stitutional the provision in the Act there in question which provided for a trial de novo in the circuit court, both because it would have permitted a jury to substitute its own findings for that of the oil and gas board, wherein the board was acting legislatively, and also because of the odd, confused and inconsistent provisions of the Act there under consideration.

We had prior to the decisions in the McLeod and California cases upheld the right of the circuit court to judicially determine whether the public service commission in the case of Dixie Greyhound Lines, Inc. v. Miss. Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So. (2d) 489, had acted on substantial evidence in rendering the judgment appealed from therein, or had acted arbitrarily or capriciously or beyond its power, etc. We are therefore unable to agree with the argument of the City of Meridian in challenging the constitutionality of the Act here involved on the objection that it provides for an appeal to the circuit court; and we adhere to the decision on the first appeal in the McLeod case, to the extent that the Act in question was held to be constitutional, and base our decision in so doing on the fact that the issue in the circuit court is limited by the Act to the question of whether the decision of the civil service commission ''was or was not in good faith for cause.''

In the case of Russell Investment Corporation v. Russell, 182 Miss. 385, 178 So. 815, 182 So. 102, 107, we held on Suggestion of Error that: ''In determining whether statutes enacted by the legislature transcend the limits imposed by the federal and state constitutions the courts should proceed with the greatest possible caution; and they should never declare a statute void unless its invalidity is in their judgment established beyond reasonable doubt. They should adopt a construction that will bring it into harmony with the constitution by restricting its application to the legitimate field of legislation, whenever necessary in order to up-

hold its constitutionality and carry its provisions into effect." Citing numerous authorities. And the same principle was recognized in California Co. v. State Oil & Gas Board, supra.

Prior to enactment of the Act here involved, the governing authorities of municipalities in this State could exercise, as a proper function of local government an uncontrolled discretion in the matter of discharging city employees for any reason satisfactory to the appointing power, or for no reason at all, but by this Act the Legislature withdrew this unrestricted power from municipalities as to experienced members of fire and police departments, and restricted the right of discharge to the cases mentioned in Section 9 of the Act. The right of such an employee to continue on his job and enjoy the retirement benefits, etc. under civil service is a valuable right which should be protected by the courts to the extent of seeing to it that action of a civil service commission in discharging such an employee is taken only in good faith and for a cause enumerated in the Act in question. There is scant difference, if any, in not acting in good faith for cause and in acting without substantial evidence, arbitrarily or capriciously, or beyond the power of the commission, etc. Therefore, the decisions in the case of Dixie Greyhound Lines, Inc. v. Miss. Public Service Commission, supra, the decisions on subsequent appeals from that commission, and the case of the California Co. v. State Oil & Gas Board, have a very material bearing on the question presented in the instant case, both as to the power of judicial review by the courts and the issue to which they are confined on the appeal.

In the case of Clancy v. Board of Fire & Police Commissioners of Milwaukee, 150 Wis. 630, 138 N. W. 109, 110, involving the discharge of the chief of the fire department of Milwaukee, the Court upheld the constitutionality of the Act, which provided, according to what is stated in the opinion of the Court, that the case "shall be tried by the court without a jury upon the evidence returned by

the board." And the Court held that "Upon this retrial the only question to be reviewed by the court is the question 'Under the evidence was the decision of the board reasonable?' ", and the Court further held that the legislative idea was that: "the circuit court should have power to summarily review the trial and decision, not for the purpose of deciding whether the officer was in fact guilty of the charges made, or whether the court would decide the same way upon the evidence, but simply whether the board had performed its statutory duty and made a reasonable decision upon the evidence; i. e., had acted not necessarily wisely, but as reasonable men, upon the evidence placed before them.

"In substance, this appeal was intended to perform the functions of a writ of certiorari in a case where the writ is directed to a tribunal of this nature, namely, to review the evidence to ascertain only whether there was reasonable ground for the decision made. . . . That general purpose, as before said in this opinion, is clearly not to make the court a trier of the facts, but simply a trier of the question whether the board has acted reasonably [in the instant case in good faith for cause] on the evidence before them. To so construe the law as to permit the court to pass upon the question of guilt as an original question upon evidence never considered by the board would subvert its dominant purpose, and should not be done, unless unequivocal words require such construction."

In the case of Appeal of Fredricks, 285 Mich. 262, 280 N. W. 464, 125 A. L. R. 259, the appellants, as employees of the fire department, were discharged and a hearing was held before the civil service commission, which sustained the action of the discharging officers. On appeal to the circuit court, the same was dismissed on the ground that the statute was unconstitutional and void in imposing nonjudicial functions upon the court. The Supreme Court agreed with the trial court that nonjudicial functions could not be conferred upon the courts, but upheld

the right of appeal on the ground that the Legislature did not intend a review de novo by the circuit court, but intended to limit the appeal to the confines of certiorari. In that case, however, the Act expressly provided that the appeal should be on the record (including the testimony) as made before the commission, and we so construe the provisions of the Act here in question, wherein it requires that "a certified transcript of the record" shall be filed by the commission with the circuit court. We so construe the Act in that regard in order to render the hearing on appeal a judicial one instead of having the ciruit court substitute its judgment for that of the commission on an executive or administrative matter, and to enable the court to intelligently decide the limited issue to which it is confined by the statute.

The case of City of Aurora v. Schoberlein, 230 Ill. 496, 82 N. E. 860, 862, which held, contrary to our decisions, that there is no property right involved in the claim of an employee to continue in civil service and receive retirement and other benefits, recognized that cases involving property rights may be appealed from nonjudicial bodies to courts, but it was reasoned in the opinion that if the circuit courts should assume to exercise executive powers "They would practically control the appointment and removal of members of fire departments in the cities of this state to which the act applies, by the exercise of judgment and discretion as to fitness and qualifications of individuals for positions in such departments, and not by adjudicating rights or applying the rules of law. That would be the exercise of executive powers, which the separation of departments of the government precludes the court from exercising." In 37 Am. Jur. 871-872, Section 243, it is said: "The officer or board having the power of removal is the sole judge of the existence of the cause alleged for removal, and his or its opinion or judgment is conclusive if there is any evidence whatever to support it. . . . It is, however, for the courts to determine whether the cause alleged is sufficient as a matter of law, and whether

there is any evidence to support the charge, . . .''.

In Williams v. Dent, 207 Ark. 440, 181 S. W. (2d) 29, 33, the Court held: "The Council, in the first instance, determines sufficiency of the evidence, while Circuit Court examines the record to determine if such evidence was sufficient as a matter of law." In Crede v. City of Pittsburgh, 355 Pa. 369, 49 A. (2d) 700, 703, it is said: "The court below and this Court on appeal are without authority, therefore, to consider the weight of the testimony given at the hearing before the Commission, even though, in fact, the decision of the Commission may have been wrong: Souder v. Philadelphia, 305 Pa. 1, 8, 156 A. 245, 247, 77 A. L. R. 610." In Gretton v. City of Pittsburgh, 344 Pa. 219, 25 A. (2d) 351, 352, the Court said: "findings of fact of a civil service commission are binding if the court of common pleas, after an independent examination of the record, finds that there is substantial evidence to sustain them; it is not for the court to weigh the evidence but only to make sure that there has been no abuse of discretion on the part of the commission: Lowrie's Appeal, 338 Pa. 203, 205, 12 A. (2d) 582, 583; Raffel v. City of Pittsburgh, 340 Pa. 243, 246, 16 A. (2d) 392, 393." In the case of Vetterli v. Civil Service Commission of Salt Lake City, 106 Utah 83, 145 P. (2d) 792, 797, it is said: "the power conferred on the commission to 'determine the matter' brought before it on appeal, is the power to determine the sufficiency of the cause of removal, and not simply to adjudge whether the cause alleged by the department head is true. It having that authority, it is not our province to interfere with the exercise of that judgment and direct an order of affirmance or reversal of the order of discharge. We are limited in this proceeding to a determination of whether the commission regularly pursued the authority conferred upon it, and clearly we may not reverse the case on the facts unless the commission acted arbitrarily or capriciously. Pincock v. Kimball, 64 Utah 4, 228 P. 221." See also State ex rel. Stewart v. Reed, Mayro, Ohio App., 68 N. E. (2d) 353.

The case of Texport Carrier Corporation v. Smith, D. C., 8 F. Supp. 28, and Civil Service Commission of Van Buren v. Matlock, 205 Ark, 286, 168 S. W. (2d) 424, would permit the taking of more evidence before the *court* on appeal, as was done before the jury by the employee here; and to the same effect is an unfortunate statement in the opinion in California Co. v. State Oil & Gas Board, supra. But neither of the three cases permit a trial anew of the issue heard by the commission or board.

As hereinbefore shown, the Act in question provides for a trial by jury in the circuit court, but it is conceded by counsel for the employee that a trial de novo is not contemplated. It is recognized that the issue on appeal is limited to whether the action of the commission was or was not in good faith for cause, and since we are holding that a transcript of the evidence taken before the commission is essential to a determination of the issue before the circuit court, it will be readily seen that on a jury trial we would have the novel procedure of a jury sitting and listening to the reading of a transcript of the evidence taken before the commission to determine whether or not it is sufficiently substantial as a matter of law to constitute a cause for removal of the employee for cause in good faith, since the jury is not permitted to retry the facts.

In the cases of Rosenfelder v. Huttoe, 156 Fla. 682, 24 So. (2d) 108; Barron v. Baillies, 157 Fla. 492, 26 So. (2d) 449; Hammond v. Curry, City Manager, 153 Fla. 245, 14 So. (2d) 390; Carrol v. City Commission of Grand Rapids, 265 Mich. 51, 251 N. W. 381; People ex rel. Sweeny v. Allman, 315 Ill. App. 133, 42 N. E. (2d) 115; and Campbell v. Civil Service Commission of City of Springfield, 290 Ill. App. 105, 8 N. E. (2d) 49, cited by the employee herein, the Courts held as a matter of law that there was no substantial evidence to support the finding of the executive or administrative agency in removing a city employee. If such had been true in the present case, there would have been no occasion to submit the matter to the jury, but the question should have been decided by the

court in favor of the employee. On the other hand, if there was a substantial support in the evidence heard by the commission for the action in discharging the employee, the Court should hold as a matter of law that its action should be sustained, the same as on appeals from our Public Service Commission.

In Nelson v. State ex rel. Quigg, 156 Fla. 189, 23 So. (2d) 136, the Court, in reviewing the action of the City Commission of Miami, said: ''We have held, and it seems to be an almost universal rule, that the findings of fact made by an administrative board, bureau, or commission, in compliance with law, will not be disturbed on appeal if such findings are sustained by substantial evidence. Hammond v. Curry, 153 Fla. 245, 14 So. (2d) 390; Jenkins v. Curry, [154] Fla. [617], 18 So. (2d) 521; Callahan v. Curry, 153 Fla. 744, 15 So. (2d) 668; Marshall v. Pletz, 317 U. S. 383, 63 S. Ct. 284, 87 L. Ed. 348; Virginia Electric & Power Co. v. National Labor Relations Board, 319 U. S. 533, 63 S. Ct. 1214, 87 L. Ed. 1568. The underlying and salient reasons for this safe and sane rule need not be repeated here. The fact that it is not the province of an appellate court to try cases de novo on a cold typed transcript is too elementary to require emphasis.''

 The views hereinbefore stated will require a reversal and remand of the instant case in order that the circuit court may send it back to the Civil Service Commission of the City of Meridian for the retaking of testimony on the charges against this employee and the filing of a transcript thereof in the circuit court prior to a rehearing of the appeal in such court. We do this for the reason that the parties relied upon the holding of the McLeod case, supra, and failed to have the testimony taken and transcribed. It is only by the use of the evidence heard by the commission that the employee can have his case reviewed in the circuit court on the limited issue prescribed by the Act in regard to the appeal to the circuit court, and it is only by this means that the city will be able to have the issue in the circuit court confined

to a determination of whether the discharge of the employee by the civil service commission "was or was not made in good faith for cause" on the evidence heard by the commission. Most assuredly, no appellate court should be permitted to say that the constituted authorities of a municipality, who are directly responsible to the citizens thereof, have acted in bad faith in discharging an employee if you take away from the court the evidence upon which the city officials have acted.

The record before us affirmatively shows that some of the witnesses who testified in the circuit court had previously testified at the hearing before the commission. However, the record is silent as to whether some of the other witnesses testified at both hearings, and it does affirmatively show that several of those who testified in the circuit court did not testify before the commission. Moreover, there was injected into the trial in the circuit court the question of whether or not Captain Terry of the fire department bore ill will and was prejudiced toward this employee, and it was contended that the ill will and influence of the captain was responsible for the employee having been suspended in the first instance. Much was made of this contention on the trial in the circuit court, and instances of alleged unfair treatment of him by the captain were related, whereas it does not affirmatively appear from the record with any reasonable degree of certainty that this was an issue at the hearing before the civil service commission.

Again, two witnesses who had been connected with the police department for many years testified that the employee here involved was brought to the police station between three and four o'clock on the morning of December 24, 1949, in a taxicab, and that he "was drunk and had passed out", that he had part of a bottle of whiskey in the taxicab on the seat beside him and that they had the taxi driver carry him to the fire department to be sent home. This testimony was positive and unequivocal as to the date of the occurrence and was relevant and

competent as a circumstance to support the contention of the city that the employee was still under the influence of whiskey at the time stated in charge number one set forth in paragraph two of this opinion. The incident testified to by the two policemen was admitted by the employee but he introduced testimony in the circuit court to the effect that this occurrence was on the morning of December 26 instead of December 24, and introduced one or more witnesses in support of such contention who admittedly did not testify before the commission.

The chief of the fire department, P. M. Pigford, who testified before the commisssion and also in the circuit court, said that at the instance of Captain Terry of the fire department he went upstairs at or about 9:15 a. m. on December 24, 1949, "to look things over", and that he noticed the breath of this accused employee and that he "smelled like a whiskey barrel"; that he asked him "if he was not drinking or hopped up on something"; that he, the witness, "did not consider him in a condition of safety to be on the job", and that he thereupon suspended him. This witness was offered by the employee as an adverse witness on the trial in the circuit court, but the court sustained the objection of the city to his being used as such a witness, since he was neither a member of the city commission nor of the civil service commission, and therefore did not come within Section 1710, Code of 1942, authorizing the introduction of an adverse party as a witness. He was then interrogated on behalf of the employee as a witness.

This witness further testified that immediately following his conversation with the employee, the latter, upon leaving the premises, made complaint to his fellow employee and superior officer, Captain Terry, saying that Terry had reported him to the chief of the fire department a few minutes before and had accused him of being drunk. Captain Terry denied having done so and was then called a "d.... l...." by the employee, who then had a small knife open in his hand, and Captain Terry as a witness

for the city testified that although this employee did not attempt to cut him with the knife, he kept cursing the witness, and among other things called him a "G.... d.... pimping s.o.b." and threatened to cut him. Captain Terry admitted having been upstairs at the fire station where he saw the employee "asleep in a chair," shortly before he was suspended by the chief, and that he had suggested to the latter that he had better go upstairs and look things over but he did not report that the employee was drunk. This was on the occasion when it is claimed by the fire chief, Pigford, that the employee was under the influence of liquor, and at the hour stated therein.

It is contended that since the employee had turned in his fireman's cap, had been suspended, and was leaving the premises when the controversy arose between him and Captain Terry, he was no longer a member of the fire department and that any acts or conduct subsequent to his suspension by the fire chief could not be the basis of a verdict against the employee on any of the specific charges set forth in paragraph two of this opinion. The trial court refused an instruction in that behalf, and we think correctly so since this occurred prior to his discharge by the city manager on December 27, 1949. In fact, this Court stated on the first appeal in the case of McLeod v. Civil Service Commission, supra, [198 Miss. 721, 21 So. (2d) 917.] that the commission "makes, when called on so to do, the City's final decision as to whether a policeman shall be discharged." At any rate, he was not discharged by the city manager, Roark, until two days after this controversy.

Including the testimony of about seven witnesses who testified for the employee in the circuit court, and who admittedly did not testify before the civil service commission, and the testimony of other witnesses, the proof on behalf of the employee clearly preponderates in support of his contention that he was not under the influence of liquor while on duty at the time stated in charge number one in paragraph two of this opinion. The shift of

workmen changed at 8 a. m., and there were eleven employees on each of the two shifts that either went off or came on at that hour. A considerable number of these fellow firemen, who were not called as witnesses by the city, testified that they had observed nothing to indicate that the employee was under the influence of liquor or drug on the morning of December 24, 1949, or that he had had a drink. His wife and another lady who were present at breakfast time that morning at his home, and two of the firemen who had breakfast with him, all say that he drove his car to town in a normal manner at about 7:30 o'clock and that he was not under the influence of liquor. The chief of the fire department, who testified to the contrary as to his condition at 9:15 that morning, had been employed by the city for approximately forty-five years, and Captain Terry, for thirty-five years an employee of the city, was of the opinion that what he smelled was sen-sen or "something to cover up the smell of whiskey"; and, as heretofore stated, the employee and at least two or three of his witnesses testified in the circuit court that the occasion of his being carried to the police station in a drunken condition at about three or four o'clock was on the morning of December 26 instead of on the 24th of December, as testified to by the two policemen for the city.

Thus, it will be seen that the issue before the circuit court, as limited by the expressed language of the Act itself, was whether or not the civil service commission had before it such evidence as would enable the commission to find in good faith that the employee was guilty of any of the charges preferred; and that in determining this issue the jury is not shown to have had the benefit of all of the testimony heard by the commission, and did have the benefit of additional testimony, which in effect converted the trial in the circuit court into one de novo, notwithstanding the instructions given to the jury which are hereinafter discussed.

The court instructed the jury for the employee that if they believed "from a preponderance of the evidence

that the action taken by the civil service commission was not in good faith, not honestly done, not upon a cause which reasonable men, acting as such commission could reasonably say was an adequate cause", the jury should find for the employee. An instruction was granted to the City of Meridian of similar import in placing the burden on the employee to prove bad faith. But the court further instructed the jurors for the employee that "you are the sole and only judges of the weight, worth and credibility of the testimony in this case, and you may consider any ill will or bad feeling of one witness against another if any such is shown by the testimony, the interest of any witness, if any, his demeanor on the witness stand, and any other fact and circumstance in evidence that may assist you in arriving at a verdict, and you are instructed that you have a right to disregard the testimony of any witness that you believe to be untrue."

The instruction last above quoted wherein the jurors were told that they were "the sole and only judges of the weight, worth and credibility of the testimony," had the effect of ignoring the province of the civil service commission in that behalf; it authorized a verdict as if on a trial de novo; it authorized the jury to consider any ill will or bad feeling of one witness against another, if shown by the testimony, without it being shown whether or not any such proof was before the civil service commission; anl it further told the jury that "you have a right to disregard the testimony of any witness that you believe to be untrue", and this without regard to whether or not the commission may have in good faith believed the testimony of such witness to be true. This instruction is inconsistent with and contradictory of the other instructions above mentioned, and when given in connection with what may have been, so far as the jury knew, or we can tell from the record, a different case in material respects from that heard by the commission, it had the inevitable result of converting the trial into one de novo wherein the jury embarked upon the performance of an executive or ad-

ministrative function, contrary to what was held on the second appeal of the McLeod case, supra, reported in 199 Miss. 676, 24 So. (2d) 319, 321, when it was said: ''It was not competent, therefore, on the appeal, for the Circuit Court and its jury to convert themselves into an administrative body and to become a civil service commission with authority as if original to determine whether to the minds of the court and jury there was cause for the dismissal in this case. The Constitution which divides the powers of government into three separate departments, neither to usurp the authority of the other, stands forth and forbids. The only inquiry upon which the court and jury could embark was that already stated, namely, whether the action taken by the Civil Service Commission was in good faith, honestly done, and upon a cause which reasonable men, acting as such commission, could reasonably say was an adequate cause. To that extent only would or could the issue become a judicial question.''

In view of the fact that the question of whether or not the finding of the civil service commission in approving and confirming the discharge of an employee under the Act in question becomes a question of law on appeal to the circuit court,—for the trial judge to decide in favor of the employee if the evidence heard before the commission amounts to no substantial evidence in favor of the charge or charges preferred against him and renders the judgment appealed from one not made in good faith for cause, that is to say, arbitrary or capricious or beyond the power of the commission to make, etc., and, on the other hand, for the trial judge to decide in favor of the city if he finds that the evidence heard before the commission is substantial to such an extent that reasonable men on the commission could in good faith find the employee to have been guilty of an offense stated in Section 9 of the Act to be a cause for discharge,—it is the opinion of a majority of the judges that there is no proper function for a jury to perform on an appeal to the circuit court when the case is reviewed solely on the transcript of the

record made before the commission to determine as a matter of law whether or not there is a basis in substantial evidence of its good faith, that is to say whether the judgment rendered by the commission "was or was not made in good faith for cause". It is to be conceded that the Act does not authorize the circuit court to determine the factual issue of whether or not the employee was guilty or innocent of the conduct complained of, but merely whether the commission could have reasonably acted in good faith in believing so from the evidence before it, and whether the alleged conduct amounted to a cause for discharge. As heretofore stated, a majority of the judges are of the opinion that the inquiry last above mentioned presents purely a question of law, since the Act itself defines what constitutes a cause, and it is always the province of the trial judge to determine whether or not there is substantial evidence to sustain a finding of fact about which men may reasonably disagree.

We have discussed some of the instructions given in the circuit court to show that for all intents and purposes, the trial therein amounted to one de novo, notwithstanding the fact that it is conceded by counsel for the employee that the Act in question, unlike the one involved in the case of California Co. v. State Oil & Gas Board, supra, does not expressly provide for such a trial. Moreover, it is urged by the employee that the very fact that the issue in the circuit court is limited is the feature thereof which renders the Act constitutional.

We are in accord with the view that the Legislature may grant the right to a jury trial in cases not provided for by the Constitution, and we recognize the rule that the Legislature in reenacting Section 10 of Chapter 208 of the Laws of 1944, as Section 10 of Chapter 503 of the Laws of 1950, is presumed to have approved the interpretation which this Court had already given said section in the McLeod cases, supra. However, the question is not what the Legislature intended to do but rather whether it had the constitutional power to confer upon

the circuit court the exercise of the nonjudicial function of permitting a jury to substitute its judgment for that of an executive agency on the question presented by an appeal to the circuit court as to whether or not the finding of the executive agency had a basis in substantial evidence such as to prevent it from being one not rendered in good faith for cause. It was for such want of legislative authority that we struck down as unconstitutional the provision for a trial de novo in the Act involved in the case of California Co. v. State Oil & Gas Board, supra.

Nor are we unmindful of the constitutional guaranty that the right of trial by jury shall remain inviolate when there is involved an issue as to the property rights or liberty of the citizen, and where the function of the jury is to determine the truth or falsity of the testimony. But, the issue as to the guilt or innocence of the accused employee is not the question prescribed by this Act to be determined on the appeal from the executive agency to the circuit court. There is nothing novel about our holding in the instant case that on appeals from an executive or administrative agency the issue presents a question of law as to whether or not the judgment of such agency has a sufficient basis to show good faith and cause, or whether it is without substantial evidence, arbitrary or capricious, or beyond the power of the agency to make, etc. Such is the case in all appeals from the Public Service Commission, and other similar executive or administrative agencies.

It is true that important and valuable property rights and benefits of the employee are involved, as we have hereinbefore recognized, but such fact does not always entitle the interested party to invoke the constitutional guaranty of a trial by jury. This truth can not be better illustrated than by the fact that the Constitution itself confers upon the chancery court the jurisdiction to try both questions of law and fact where important property rights are involved, and without the intervention of a jury, and this right is conferred by statute upon the cir-

cuit court without the intervention of a jury on appeals from the Public Service Commission and other executive or administrative agencies. And nothing in this decision is intended to in any manner impair the right of trial by jury in proper cases.

It is the thought of some of the Judges that an issue of fact for a jury could arise if on appeal to the circuit court the employee should offer evidence *dehors* the record of the testimony taken before the commission, bearing directly upon the want of good faith of that body, as for instance, where it could be shown that a majority of the commissioners (two of them having the right to render the judgment for it) had stated that they did not believe the employee guilty of the conduct complained of, but that they had been awaiting the opportunity to get rid of the employee on general principle, or that they were merely paving the way to give the employment to someone else, or had voted for some other extraneous reason than on the actual merits of the charges preferred against the employee. However, no such issue is here presented and we merely hold for the purpose of the decision in the instant case that as long as the issue is such as that raised in this case, it is to be decided as a question of law on the evidence alone taken before the commission. We pretermit any decision as to the validity of the provision in the Act for a trial by jury insofar as the trial of such an issue of fact as that last above stated may be developed at some future hearing of this or some other case may be concerned.

The case must be reversed and remanded for further proceedings not inconsistent with the views hereinbefore stated as to a rehearing before the commission, when a transcript of the evidence shall be preserved for use on another appeal to the circuit court.

Reversed and remanded.

**Lee, J.** (dissenting).

I think the two cases, McLeod v. Civil Service Commission of Jackson, 198 Miss. 721, 21 So. (2d) 916, 918, and City of Jackson v. McLeod, 199 Miss. 676, 24 So. (2d) 319, were correctly decided. In my opinion, they should be adhered to. Stare decisis would compel an affirmance of this cause.

In the former case, this Court held (1) that Chap. 208, Laws of 1944 is constitutional; (2) that, on appeal to the circuit court, a cause is not to be tried on a transcript of the evidence taken before the commission; and (3) the right of trial by jury means ''a trial de novo before a jury under the guidance and control of the trial judge, each of these branches of the court discharging the same functions that it always does in trials therein.'' The opinion must have been concurred in by all of the judges—there was no dissent.

On the return of the case here, as the latter styled cause, the majority opinion in no way changed or modified its previous decision. In his specially concurring opinion, Judge Sydney Smith, the organ of the Court on the first appeal, said in part: ''What this Court there intended to hold, and . . . seems clearly to have held, is that the issue designated by the statute—whether the judgment of the Civil Service Commission was made in good faith for cause—should not be tried on a transcript of the evidence heard by the Commission, but anew, i. e., on evidence then introduced before the jury.'' Even in the dissenting opinion, it was said: ''The former reversal was of necessity based upon the theory that the fact of whether or not these men were discharged in good faith and for cause was a jury question; that is to say, an issue of fact to be determined under all of the evidence on a trial de novo in the Circuit Court where the jury should discharge 'the same functions that it always does in trials therein.' ''

In thus proclaiming the significance of a jury trial in the circuit court, this Court was evidently keeping in remembrance its former decisions and the statutes. Where a "controversy in the circuit court is tried anew . . .," it is a trial de novo." Knox v. L. N. Dantzler Lbr. Co., 148 Miss. 834, 114 So. 873, 876. "To try a cause anew means to try it as if it never had been tried before." Whittle v. City of Hàttiesburg, 132 Miss. 808, 96 So. 741. Compare Sec. 1201, Code of 1942; Callahan v. Newell, 61 Miss. 437; Amory Independent Telephone Co. v. Cox, 103 Miss. 541, 60 So. 641; National Hdw. Lumber Ass'n v. Gilmore Puckett Lbr. Co. Miss., 49 So. (2d) 689. Even in the case of California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So. (2d) 542, 544, 28 So. (2d) 120, decided in October 1946, it was said: "A trial de novo, within the common acceptation of that term . . . and . . . decisions of this Court, means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken."

The court was mindful that a jury trial is "a substantial and valuable right, and should not be lightly denied." 50 C. J. S., Juries, Section 9, p. 722. In Magna Charta, it was considered the great bulwark of English liberties, for there it was provided: "No freeman shall be hurt, in either his person or property unless by lawful judgment of his peers or equals, or by the law of the land." It is now regarded as a basic and fundamental feature of our jurisprudence, and has become a part of the birthright of every free man.

"A jury trial is a proceeding in which the jurors are the judges of the facts and the court is the judge of the law." 31 Am. Jur. 550. "The controlling functions of a jury are to pronounce on the credibility of witnesses; to determine disputed facts; to draw conclusions from doubtful and contradictory premises . . ." 53 Am. Jur. 143. In construing Sec. 31 of our Constitution, where

it is ordained that "The right of trial by jury shall remain inviolate", this Court in Dement v. Summer, 175 Miss. 290, 165 So. 791, 793, said: "*A trial by jury* in a court of superior original jurisdiction *is universally held to mean a jury* of twelve qualified persons *who shall decide the facts under the superintendence of a trial judge,* who shall have the sole power to declare the law." (Emphasis supplied.)

The inviolate right of trial by jury, guaranteed by Sec. 31 of the Constitution, of course, refers to those cases in which the right existed at the time of the adoption of the guaranty. And, it is true that Chap. 208, Laws of 1944, was passed subsequent to the adoption of the Constitution of 1890. But, "In those cases in which the Constitution does not guarantee a jury trial, the legislature may grant or deny the right to a jury trial. . . ." 50 C. J. S., Juries, Section 10, p. 725. And the Legislature exercised its right and power in this instance. It provided that, upon appeal to the circuit court, "the accused shall have the right of trial by jury". Sec. 10, Chap. 208, Laws of 1944. The language is plain and unequivocal. It imposes no limitation.

Most significant of the intention of the Legislature is its identification of the discharged employee as "the accused". In said Chapter 208, supra, it is provided that the public hearing is to be held after notice to "the accused". At such hearing, "the accused" may present his defense. "The accused" may appeal to the circuit court. On such appeal, "the accused" shall have the right of trial by jury.

"The accused" has a definite and certain meaning in our jurisprudence. It is defined only as "one charged with an offense; the defendant in a criminal case." Webster's International Dictionary 2nd Ed. 1 C. J. S., Accused, p. 770 gives this definition: "One who is charged with a crime, a person proceeded against by indictment, information, or other penal proceeding. The word has been held inapplicable to a defendant in a civil action;

but to be synonymous with 'defendant' in criminal cases . . ." Common acceptation as such no doubt stems from widespread familiarity with the Bill of Rights. "In all criminal prosecutions *the accused* . . ." Article 6, Amendments, Constitution of the United States. See also the identical language in Sec. 26, Constitution of 1890.

By such characterization, evidently the Legislature intended that a civil service employee, on appeal to the circuit court, should have a jury trial as if he were charged with a criminal offense. And undoubtedly this Court, in holding that there must be a trial anew, must have been profoundly impressed by such characterization.

It should be kept in mind that the Legislature may grant the right to a jury trial in cases not provided for by the Constitution. 50 C. J. S., Juries, Section 10, p. 725, supra. And where the Legislature has exercised its right and power, the courts must not impair or take it away. "The right of trial by jury, where it is granted by constitutional or statutory provision, cannot be taken away or impaired by the courts, . . .". 31 Am. Jur. 561.

The McLeod cases, supra, were decided in 1945. The Legislature, at its 1950 session, again had Chap. 208, supra, under consideration. We must assume that the Legislature was then fully apprised that this Court had previously upheld the constitutionality of the Act, together with the fundamental right of a discharged employee to appeal to the circuit court, without reference to the evidence which had been heard by the Commission, and that there, in the circuit court, he is entitled to a trial by jury—a trial de novo—a trial anew—a trial just as if it had never been tried before. If the Legislature had desired to curtail this right in any way, it could, and doubtless would, have done so. It did not do so. On the contrary, it re-enacted Sec. 10, Chap. 208, supra, as Sec. 10, Chap. 503, Laws of 1950, without any change whatsoever. By so doing, the Legislature approved the

interpretation which this Court had already given to this Act in the McLeod cases, supra, and breathed into it the life of such interpretation anew. The construction of the Court, by such readoption, became a part of the section readopted. Masonite Corporation v. Lochridge, 163 Miss. 364, 140 So. 223, 141 So. 758.

Davidson's employment as a fireman, under civil service, as said by this Court in City of Laurel v. Reddoch, 200 Miss. 259, 26 So. (2d) 465, 467, is "a valuable right and one of importance to him not to lose." He could not lawfully be discharged except in good faith for cause. But he was discharged. On the issue of good faith for cause—the instructions were couched in the exact language of the model which was fashioned and approved in the second McLeod case, supra—the jury in the circuit court found that his discharge was not in good faith for cause. The verdict of the jury, in my opinion, is sustained by the overwhelming weight of the evidence. In such circumstances, what can be wrong with our jurisprudence if it will not countenance the deprivation of Davidson's valuable right to work as a fireman, and thus earn a livelihood for himself and family, together with other incidental benefits, except upon the verdict of a jury?

There are two reasons why we should not be worried about decisions of other jurisdictions, cited by the majority opinion, on the constitutional question: (1) We have already settled that question; and (2) those decisions are not in conflict with ours. In the second McLeod case, supra [199 Miss. 676, 24 So. (2d) 321], it was said: "The Legislature could not confer on a circuit court or any other judicial court the authority to appoint or to discharge city employees, . . . and as already pointed out the Legislature has been careful not to do so in the cited Act . . ." But, it was also there said: "When an executive or administrative officer or agent goes beyond the scope of the power vested in him by law it becomes a judicial question . . .". The

Act in question confers no power on the circuit court to appoint city employees. It does place a limitation on the discharge of certain employees, who, by law, have acquired vested rights. The power of discharge still exists even as to those employees, when exercised in good faith for cause. Besides, "A city derives its existence and powers by charter from the State. It can do and perform all acts for which it has authority thereunder . . .". City of Indianola v. Sunflower County, 209 Miss. 116, 46 So. (2d) 81. Manifestly, the sovereign is the sole judge as to what powers it will grant.

I am unable to see how Dixie Greyhound Lines v. Miss. Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So. (2d) 489, cited in the majority opinion, is applicable. Sec. 7699, Code of 1942, fixes the method of appeal in those cases. No jury trial is provided for.

Although much weight seems to have been given to the case of California Co. v. State Oil & Gas Bd., 200 Miss. 824, 27 So. (2d) 542, 544, 28 So. (2d) 121, it is conceded in the majority opinion that it involved the construction of a "statute much at variance with the one now before us". Indeed, it is at variance; and for that reason, should not lead us awry. The particular language dealt with there was: "and the matter shall be tried de novo by the circuit court and the circuit court shall have full authority to approve or disapprove the action of the board." While there was a provision for a trial "de novo", in the next breath, the court could only "approve or disapprove" the action of the board. These expressions were wholly inconsistent. The opinion so said. Under such circumstances, the Court invalidated the "de novo" provision, but upheld the appeal under the limitations therein mentioned. It was pointed out that the board was composed of those charged with administering a great public policy and of experts. It ridiculed the idea of by-passing such a board, possessed of learning, knowledge and skill in the extraction of oil

from the earth, and substituting therefor a jury of non-experts.

That principle is a far cry from the one involved here. On the question of good faith and cause, whether Davidson was under the influence of liquor, or made an assault upon, or was disrespectful to his superior, a fair-minded jury ought to have been as competent as the Civil Service Commission. The latter were not shown to have possessed any greater learning, moral fitness or strength of character than the members of the jury. I think the Legislature intended that in the trial in the circuit court the jury should be the intermediate triers of the factual issue there presented.

The fallacy of the majority opinion springs from confusing the provisions of Chap. 208, supra, with those in regard to appeals from other boards or commissions. The distinction is that, in the former, the right on appeal to a trial anew is untrammeled, whereas, in the latter, the right is circumscribed by limitations. Instead of recognizing the distinction and giving validity to the unmistakable purpose of the legislature, the majority opinion confines Chap. 208, supra, to the strait jacket of other procedures, which are wholly foreign and apart. In my opinion, this constitutes the rankest kind of judicial legislation.

The majority opinion takes the position that this case poses an incongruous problem because the jury determined the good faith for cause of the Commission when it did not have the same evidence that the Commission considered. But, when it is remembered that the case was tried anew in the circuit court, surely it may be assumed that, so far as the City was concerned, the jury heard all of the evidence in defense that the City offered before the Commission. It is inconceivable that the City presented a weaker case before the jury than it did before the Commission. And the jury decided that such evidence was not sufficient to show that the discharge was motivated by good faith and cause. The circuit court,

in a trial de novo, or anew, on appeal from a justice of the peace court, has no bounden duty to uphold the judgment of the lower court. Such trial is a new deal. Neither should this Court strive to give sanctity to the decision of the Commission. It is a mere inferior tribunal itself.

The majority opinion leaves the McLeod cases in effect only so far as they uphold the constitutionality of Chapter 208, supra. Otherwise, as I see it, they have been overruled, and the provisions of said Chapter have been completely rewritten by the Court. Formerly, no transcript of the evidence taken before the Commission was provided for or required. Now, such transcript is required. Formerly, the discharged employee, on appeal, was entitled to a trial anew. Now, he can have no trial anew. Formerly, he was entitled to a jury trial on appeal. Now, he can have no jury trial. We have seen that the legislature had the power to provide for a jury trial in this kind of case. 50 C. J. S., Juries, Section 10, p. 725, supra. We have seen that, in such event, this Court has no power to take away or impair such right to a jury trial. 31 Am. Jur. 561, supra. But the majority opinion does exactly that which, under the law, it has no power to do. It is not content with merely impairing the right— it completely takes it away and abolishes it. While maintaining belief in, and adherence to, the inviolate right of trial by jury, this decision turns such right into mere "sounding brass or a tinkling cymbal". I protest against such rank judicial legislation as vehemently as I know how.

The instruction for the employee, on the merits, is set out in the majority opinion, and it is there conceded that the City obtained the converse. Besides, the City obtained another instruction which told the jury that "the only question to be decided by you is whether or not the action taken by the Civil Service Commission was in good faith, honestly done and upon a cause which reasonable men, acting as such Commission could reason-

ably say was adequate cause. . . . '' If ever instructions were free from error, both under the McLeod cases, supra, and also under the terms of the controlling opinion, we have them in this case. They are absolutely perfect.

I cannot agree with the criticism of the instruction given for Davidson to the effect that the jury are the judges of the weight, etc., of the evidence, set out in the majority opinion. Actually, in view of the abolition of the right to a jury trial, it has had no effect on this decision, and will never have any in the future. Obviously, its discussion is superfluous. But, the instruction, in my opinion, sets out an accurate statement of elementary principles of which the jurors were doubtless already aware. It was their province to resolve the issue in dispute. Their attention was called to the several traits which often motivate human testimony. In this country, we subscribe to the theory that, if the jurors hear the witnesses and observe their demeanor on the stand, they will be able to determine the truth. This necessitates, when the evidence is conflicting, belief of some and disbelief of others. The criticised instruction, by direction to the elementary facts of human nature, was calculated to guide the jurors in arriving at sound and valid conclusions. The Court could not have told the jury anything which was more self-evident.

The majority opinion concedes that ''the proof on behalf of the employee clearly preponderates in support of his contention that he was not under the influence of liquor while on duty at the time stated in charge number one in paragraph two of this opinion.'' Supplementing that statement, 19 witnesses testified for Davidson. They literally abstracted his movements during the night before and until his discharge. They testified that he was not under the influence of liquor and gave no evidence thereof at all. Only six witnesses testified for the City. One smelled something like sen-sen on Davidson's breath. Another said he smelled the odor of liquor. The version of two others was completely impeached, if the jury

believed the impeaching evidence. The evidence of the other two was of little, if any, evidentiary value. Of the 20 odd firemen, working with and around Davidson, and likewise employees of the city, the City offered not a single one.

Since the question before the jury was whether or not the action of the Civil Service Commission was in good faith, honestly done, and upon a cause, which reasonable men, acting as such commission, could reasonably say was an adequate cause, I think the production of all the facts was necessary to enable the jury to determine the alleged good faith for cause of the Commission. If evidence of good cause was slight, that fact ought to impair a claim of good faith. And when the City failed to produce any of the large number of its employees who were working with and around Davidson, whereas Davidson did produce a number of them, such fact, in my opinion, induced the conclusion that the discharge was not made in good faith.

The determination of human rights by a subsequently adopted rule, different from that in effect at the time of the accrual of such rights, was so repulsive to the Founding Fathers 'that they wrote into the Constitution of the United States a prohibition against the passage of any ex post facto law. Par 3, Sec. IX, Art. I, Constitution of the United States. See also Sec. 16, Art. 3, Mississippi Constitution. Davidson's rights under Sec. 10, Chapter 208, supra, accrued and were determined in the lower court in conformity with the interpretation and construction thereof, as laid down in the McLeod cases, supra. The Court has now experienced a change of heart. Those cases have been overruled to the extent of shearing away the heart of the applicable rule, and substituting therefor a harsher and altogether different rule. By such ex post facto judicial legislation, this Court has done that to Davidson which, under no circumstances, would it allow to be done unto him by the Legislature. Thus

again and finally, I protest against such judicial violence as vehemently as I know how.

**Hall, J.** (dissenting).

I respectfully dissent from the majority opinion herein and concur in what has been said by Justice Lee in his dissenting opinion.

The majority opinion says in one place that the Civil Service Commission of the city exercises "purely an executive function" and in another place that it exercises a "purely executive or administrative function" and that it was beyond the power of the Legislature to foist upon a court and jury the performance of nonjudicial functions. I cannot see in what respect the functions of the Civil Service Commission are either executive or administrative, and therein lies one of the differences between this case and those involving orders of the State Oil and Gas Board and the Public Service Commission. Matters before the Oil and Gas Board originate and are initiated before that body; the same is true as to matters before the Public Service Commission; both of those bodies administer the laws falling within their respective jurisdictions. This case, however, did not originate before the Civil Service Commission; it began when the appellee was discharged by the city officials, and there it would have ended if appellee had not demanded an investigation pursuant to Sec. 10, Ch. 208, Laws of 1944, which demand is, in effect, an appeal to the Commission from the action of the city authorities. The Commission does not exercise a single executive or administrative function in the hearing of such appeal; it acts strictly in a judicial capacity; it hears the evidence and judicially determines whether the employee was discharged in good faith for cause. Every function which it exercises is purely judicial and involves a decision on questions of both law and fact. This being true, I cannot concur with the majority of the Court in asserting that it is

beyond the power of the Legislature to grant a trial de novo upon an appeal to the circuit court from a decision of the commission. No section of the Constitution is cited to support such a holding and I am unable to find any.

Section 171 of the Constitution creates the office of justice of the peace, but makes no provision for the procedure on an appeal to the circuit court from a judgment of a justice of the peace. By Section 1201, Code of 1942, the Legislature has provided that when a case is appealed from a justice of the peace to the circuit court it shall be tried anew, and no court of this state has ever asserted that the Legislature did not have such a right.

By Sec. 10, Ch. 208, Laws of 1944, there is not a single provision that a stenographer shall take down the evidence on the hearing before the commission and transcribe the same; it is simply provided that the accused may appeal by giving a written notice of appeal to the circuit court and "demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such judgment or order, be filed by the commission with such court. The commission shall, within ten days, after the filing of such notice, make, certify and file such transcript with such court". If the Legislature had intended to require that a reporter take down the evidence and transcribe the same and file it with the commission it would have been an easy matter to have so provided by simply substituting the word "evidence" instead of the word "record" so as to provide that there shall be filed a "transcript of the evidence" but it did not so provide. In my judgment a "transcript of the record" is not a "transcript of the evidence". It is at once conceivable that in many hearings before the commission it would be a physical impossibility for a stenographer to make up a transcript of the evidence within ten days. Reverting again to justices of the peace, there is no provision for having a court reporter and transcribing the evidence in ordinary cases

in a justice of the peace court, and yet by Section 1198, Code of 1942, it is provided that after notice of appeal and filing of an appeal bond "The justice of the peace shall at once make up a *transcript of the record* and properly transmit the same to the clerk of the circuit court, and if he shall fail to so make up and transmit the *transcript of record* in fifteen days after the bond has been filed, the circuit court shall make an order disallowing court costs to the justice of the peace". Webster defines "transcript" as a written copy. A transcript of the record simply means a written copy of the record. It does not mean a written copy of the evidence, for there is no provision for a shorthand reporter either in the justice of the peace court or in proceedings before the commission.

In my opinion when the Legislature provided that the commission should file in the circuit court a transcript of the record it meant only a written copy of such record as was made before the commission, which, ordinarily, means nothing but the judgment which was entered, just as is done in the case of appeals from a justice of the peace court. I think the majority opinion is in grievous error in assuming that when a certified transcript of the record is required it means that all the evidence must be taken down and transcribed. The cited statute does not say that the proceedings in the circuit court shall be upon the transcript of the record. It says "The said circuit court shall thereupon proceed to hear and determine such appeal and the accused shall have the right of trial by jury" and that the hearing shall be confined to the determination of whether the judgment of the commission was or was not made in good faith for cause. If the Legislature had intended that the hearing in the circuit court should be only upon a transcript of the evidence taken before the commission it could easily have so provided, but this it did not do. I think the McLeod case was correctly decided, and that upon appeal there should be a trial de novo and not upon the transcript which the commission sends up to the circuit court. What the

majority has done in this case is to entirely rewrite the legislative act and provide that which the Legislature did not provide, viz., that the commission shall employ a court reporter for the hearing before it, that all the evidence shall be taken down and transcribed, that the hearing in the circuit court shall be only upon that transcript, and that the accused shall be deprived of his right to a trial by jury.

Another instance wherein I feel that the majority opinion has gone astray, even conceding for the sake of the argument and for that purpose alone, that there must be a full transcript of the evidence filed in the circuit court, is in saying that it would be a novel procedure to have a jury sitting and listening to a reading of the transcript of the evidence and that there is no proper function for a jury to perform on an appeal to the circuit court. I cannot agree that it is a novel procedure to have a jury consider a transcript of evidence; that very thing is frequently done in the circuit court when cases are tried on depositions taken in some distant state, and no one had ever questioned the propriety of having jurors hear the reading of depositions, which, after all, are nothing more than a transcript of evidence.

I feel that the majority decision strikes at the very heart of our jury system. In the statutes authorizing appeals from the decisions of the Oil and Gas Board and Public Service Commission, provision is made for the taking and transcribing of testimony before those bodies, and there is no provision that the aggrieved party on appeal shall be entitled to a trial by jury. But here there is a specific requirement that there shall be a jury trial in the circuit court. The question for trial is not merely one of law, but is a mixed question of law and fact, and, where the Legislature so provides, all issues of fact are to be tried by a jury. I cannot agree that this Court has the right to run roughshod over an express legislative fiat when it does not conflict with any constitutional provision and especially when, as in this

case, it merely obeys the constitutional mandate that "The right of trial by jury shall remain inviolate." Sec. 31, Constitution of 1890. Bit by bit our courts are creating exceptions to the rule and thereby are chiseling away this inalienable right guaranteed by the supreme law of the land. I view with alarm the repeal of positive mandates of the Legislature by judicial construction. The jury system is the bedrock of our American way of life, and, while it may sometimes make manifest its deficiencies, no better system has yet been devised. It is no improvement to cast the jury into the discard and substitute therefor the opinion of a single judge. I close with a quotation from Hercules Powder Co. v. Williamson, 145 Miss. 172, 189, 110 So. 244, 246, 247, which I hope to again see established as the law of our state: "The ordinary jury is supposed to be, and is usually comprised of, men of education and men of little education, of men of learning in particular lines, and men whose learning consists of only what they have seen and heard, of merchants, mechanics, farmers, and laborers. Thus constituted, they sit together consulting and applying their separate experiences in the affairs of life and from the proven facts draw their conclusions. 'This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.' Sioux City & Pacific Railway Co. v. Stout, 17 Wall. 657, 21 L. Ed. page 745."